697 A.2d 577

**Anthony HORBAL and John Horbal, individuals for the use and benefit of Highland Financial Ltd., a corporation, and James R. Walsh, an individual,**

v.

**MOXHAM NATIONAL BANK, a corporation.**

**Appeal of HIGHLAND FINANCIAL LTD. & James Walsh.**

Supreme Court of Pennsylvania.

Submitted July 8, 1996.

Decided July 10, 1997.

James R. Walsh, Johnstown, for Highland Financial, Ltd. & James Walsh.

Jeffrey T. Morris, Pittsburgh, for Moxham National Bank.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

## ORDER

PER CURIAM.

The Court being evenly divided, the order of the Superior Court is affirmed.

CASTILLE, J., files an Opinion in Support of Affirmance in which FLAHERTY, C.J., and ZAPPALA, J., join.

NEWMAN, J., files an Opinion in Support of Reversal in which CAPPY and NIGRO, JJ., join.

## OPINION IN SUPPORT OF AFFIRMANCE

CASTILLE, Justice.

The issue on appeal is whether a bank/judgment creditor who purchases the debtor's real property which has been pledged as collateral for the underlying debt at a sheriff's sale in a mortgage foreclosure action, has the right after the sheriff's sale to liquidate a certificate of deposit assigned to it as security for the same debt without complying with the provisions of the Deficiency Judgment Act, 42 Pa.C.S. § 8103, *et seq.* Because we find that the bank/judgment creditor, under the circumstances of this case, did not have to comply with the Deficiency Judgment Act before liquidating the certificate of deposit, we affirm the Superior Court order.[1]

---

1. Appellants raise two other issues on appeal. First, appellants argue that the liquidation of the certificate of deposit without complying with the Deficiency Judgment Act amounted to Moxham National Bank

The relevant facts giving rise to this appeal are that on February 4, 1988, Moxham National Bank ("Moxham") loaned $120,000 to John Horbal, Anthony Horbal and Elaine Adams, co-partners t/a Potomac Associates II (collectively, the "Debtors"), for the acquisition of property at 502 Main Street in Johnstown, Pennsylvania. As collateral for the loan, Debtors executed a mortgage on that property in favor of Moxham. On February 11, 1988, the mortgage in favor of Moxham was duly recorded.

On February 18, 1988, John Horbal and Anthony Horbal, in their individual capacities, executed an instrument entitled Assignment of Deposits whereby they assigned a $25,000 Certificate of Deposit ("CD") to Moxham in order to provide additional security for the loan because the value of the property standing alone did not fully secure the loan. The Assignment of Security, in relevant part, provides that:

> [T]he undersigned, Anthony Horbal and John Horbal (hereinafter the called "Assignors"), for and in consideration of good and valuable consideration in hand paid, the receipt and sufficiency of all of which is hereby acknowledged, does hereby ASSIGN, TRANSFER and PLEDGE to the Moxham National Bank ... (hereinafter called "Bank") all of Assignors' right, title and interest, on Certificate of Deposit Number 2005581, in the principal amount of Twenty Five thousand and 00/100 Dollars ($25,000) ... (all of which is hereafter called the "Account") ...

> This Assignment and security interest is granted to the Bank [Moxham] to secure the prompt and unconditional payment and performance when due of the following (all of which is herein called the "Indebtedness").

charging and collecting a usurious rate of interest that would entitle them to treble damages under 41 P.S. § 502. Second, appellants argue that if the liquidation of the certificate of deposit amounted to charging a usurious rate of interest, they are entitled to attorney's fees under 41 P.S. § 503. Because we hold that the Deficiency Judgment Act does not apply under the facts of this case and these two issues depend on the Deficiency Judgment Act being applicable, we need not address these two issues.

Any and all indebtedness, obligations and liabilities of Potomac Associates II (hereinafter the "Debtors") to the Bank, now or hereafter existing or arising, due or to become due.

Assignors hereby constitutes [sic] and appoints [sic] the Bank their true and lawful attorney, with full power of substitution, (i) to ask, demand, collect, receive, receipt for, sue for, compound and give acquittance for any and all amounts which may be due or become due and payable under the Account (ii) to execute any and all withdrawal receipts or other orders for the payment of money drawn on the Account, (iii) and/or to withdraw all or part of the Account without notice to or further consent by Assignors.

Upon the complete payment of the indebtedness or upon the mutual agreement of the Assignors and the Bank, the Bank will release or partially release this Assignment.

If for any reason any of the indebtedness is not paid on or before the maturity thereof ... or if Assignor or Debtors shall default in the performance of any covenant or other agreement of this Assignment or of any other agreement now or hereinafter executed in connection with or as security for any of the indebtedness the Bank shall be entitled to receive or withdraw any or all items or all funds in the Account.

The rights and remedies of the Bank under this Assignment and any other instrument or agreement executed in connection with or as security for any of the Indebtedness shall be cumulative, and the exercise or partial exercise of any such right or remedy shall not preclude the exercise of any right or remedy.

In 1989, Debtors defaulted on the $120,000 loan obligation. On August 31, 1989, Moxham initiated foreclosure proceedings against Debtors in the Cambria County Court of Common Pleas. On October 24, 1989, the common pleas court entered a default judgment in favor of Moxham and against Debtors. On September 7, 1990, the common pleas court issued a Writ of Execution upon the real property of the Debtors (502 Main Street) which was serving as security for the loan.

On December 14, 1990, the real property was sold by the Cambria County Sheriff at sheriff sale to Moxham for $666.40. On January 21, 1991, the Cambria County Sheriff filed and delivered the deed for the real property to Moxham. On January 29, 1991, Moxham liquidated the CD and applied the sum of $26,437 to the Debtors' outstanding loan balance of approximately $116,000. However, Moxham failed to file a petition to fix the fair market value of the real property pursuant to the Deficiency Judgment Act.

On November 15, 1991, John Horbal and Anthony Horbal assigned to Highland Financial Limited and James R. Walsh (collectively, the "appellants") any rights or causes of action they might have by virtue of Moxham's liquidation of the funds of the CD and the application of those funds to Debtors' outstanding loan balance. On November 20, 1991, Moxham was informed of this assignment. On November 27, 1991, appellants made a demand of Moxham to turn over the proceeds it realized from the liquidation of the CD. Moxham subsequently refused to comply with appellants' request.

On March 18, 1992, appellants filed a complaint against Moxham to recover the proceeds from the CD asserting that Moxham failed to comply with the provisions of the Deficiency Judgment Act, 42 Pa.C.S. § 8103(d). Appellants' complaint sought treble damages against Moxham for allegedly charging a usurious rate of interest when it liquidated the CD, pursuant to 41 P.S. § 502,[2] and further sought attorney fees for prosecuting this action, pursuant to 41 P.S. § 503.[3] At the close of

2. Section 502 of Title 41 provides in pertinent part that:
 [A] person who has paid a rate of interest for a loan or use of money at a rate in excess of that provided for by this act or otherwise by law or has paid charges prohibited or in excess of those allowed by this act or otherwise by law may recover triple the amount of such excess interest or charges in a suit at law against the person who has collected such excess interest or charges.
 41 P.S. § 502.

3. Section 503(a) of Title 41 provides that:
 [I]f a borrower or debtor, including but not limited to a residential mortgage debtor, prevails in an action under this act, he shall recover the aggregate amount of costs and expenses determined by the court to have been reasonably incurred on his behalf in connection with the

discovery, appellants and Moxham filed cross-motions for summary judgment. On June 22, 1993, the trial court granted summary judgment in favor of Moxham on the grounds that the Deficiency Judgment Act had no bearing on Moxham's ability to liquidate the CD and to apply the proceeds to partially satisfy the outstanding debt remaining after the sheriff's sale of the real property pledged as collateral for the debt. In reaching this conclusion, the trial court reasoned that Moxham's right to the CD arose out of a contract separate and distinct from the mortgage on the property securing the loan. Moreover, the trial court reasoned that the rights to the CD vested totally in Moxham on the date of default. Thus, the trial court found that the CD was no longer a personal asset of the Debtors at the time that the sheriff's sale occurred. Therefore, since the CD belonged to Moxham and it was not a personal asset of the Debtors, the trial court concluded that Moxham was free to liquidate the CD anytime after the loan default without having to comply with the provisions of the Deficiency Judgment Act.

Appellants then appealed to the Superior Court. An *en banc* Superior Court, in a five-to-four decision, affirmed the trial court.[4] On April 11, 1996, we granted allocatur to

prosecution of such action, together with a reasonable amount for attorney's fee.

41 P.S. § 503(a).

4. The majority affirmed the trial court's holding that the Deficiency Judgment Act did not apply in this case. In affirming the trial court, the majority found that in accordance with commercial paper division of the Uniform Commercial Code, 13 Pa.C.S. § 3101 *et seq.*, Moxham became a holder in due course of the CD. As a holder in due course, the majority reasoned that Moxham acquired all of Debtor's rights in the CD upon execution of the assignment documents. Thus, the majority held that Moxham was free to liquidate the CD either before or after the sheriff's sale subject only to the terms contained in the assignment agreement.

The four dissenting Superior Court judges believed that the Deficiency Judgment Act applied to this case because the assignment and mortgage were related in that they both ensured payment of the loan and the Assignment of the CD provided that it could only be redeemed to satisfy an existing indebtedness. Since Moxham purchased the mortgaged property at a sheriff sale, the dissent argued that the failure to proceed in accordance with the provisions of the Deficiency Judg-

determine whether the Deficiency Judgment Act applied to situations such as those presented in this case.[5]

Summary judgment may be granted only when it is clear from the pleadings and the evidence that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. *Marks v. Tasman,* 527 Pa. 132, 134, 589 A.2d 205, 206 (1991) (*citing* Pa. R.C.P. 1035(b)). Summary judgment is appropriate only in those cases which are clear and free from doubt. *Id.* A trial court's grant of summary judgment will not be reversed unless it is established that the court committed an error of law or clearly abused its discretion. *Cochran v. GAF Corp.,* 542 Pa. 210, 215, 666 A.2d 245, 248 (1995).

Sections 8103(a) and 8103(d) of the Deficiency Judgment Act provide as follows:

## § 8103. Deficiency judgments

(a) General Rule.– Whenever any real property is sold, directly or indirectly, to the judgment creditor in execution proceedings and the price for which such property has been sold is not sufficient to satisfy the amount of the judgment, interest and costs and the judgment creditor seeks to collect the balance due on said judgment, interests and costs, the judgment creditor shall petition the court having jurisdiction to fix the fair market value of the real property sold. The petition shall be filed as a supplementary proceeding in the matter in which the judgment was entered.

(d) Action in absence of petition.– If the judgment creditor shall fail to present a petition to fix the fair market value of the real property sold within the time after the sale of such real property as provided by section 5522 (relating to six

ment Act created an irrebuttable presumption that Moxham was paid in full and no further indebtedness existed. Thus, the dissent believed that since no amount was due Moxham, it had no right to obtain the proceeds of the CD.

5. Neither party disputes that Moxham could have liquidated the CD anytime after the Debtors defaulted on the loan up to the date of sheriff sale on the property without complying with the Deficiency Judgment Act in order to set-off the outstanding balance due.

months limitation), the debtor, obligor, guarantor or any other person liable directly or indirectly to the judgment creditor for the payment of the debt, or any person interested in any real estate which would, except for the provisions of this section, be bound by the judgment, may file a petition, as a supplementary petition in the matter in which the judgment was entered, in the court having jurisdiction, setting forth the fact of the sale, and that no petition has been filed within the time limited by statute after the sale to fix the fair market value of the property sold, whereupon the court, after notice as prescribed by the general rule, and being satisfied of such facts, shall direct the clerk to mark the judgment satisfied, released and discharged.

42 Pa.C.S. § 8103(a) & (d).

The Deficiency Judgment Act applies whenever real property of the debtor has been sold in execution to the judgment creditor for a sum less than the amount of the judgment, interest and costs. *First National Consumer Discount Co. v. Fetherman,* 515 Pa. 85, 95, 527 A.2d 100, 104 (1987). Under the Deficiency Judgment Act, the creditor's judgment against the debtor is reduced by the fair market value of the property purchased by the creditor rather than by the actual sale price of the property. *Id.* at 96, 527 A.2d at 105. The objective of the Deficiency Judgment Act is to relieve a debtor from further personal liability to the judgment creditor when the real property taken by the judgment creditor on an execution has a fair market value on the date of sale sufficient so that the judgment creditor can dispose of the property to others without a further loss. *Id.; Philip Green & Son, Inc. v. Kimwyd, Inc.,* 410 Pa. 202, 205, 189 A.2d 231, 232–33 (1963).

Here, Moxham bought the mortgaged property at a sheriff's sale for a price well under the outstanding loan balance. Under the terms of the Assignment of Deposit, Moxham's rights to the CD were created in order to secure Debtors' outstanding indebtedness and its rights to the CD only terminated if the indebtedness no longer existed. Thus,

Moxham's right to liquidate the CD depended on its interest in the CD on the date of liquidation.

In order for any writing to qualify as a negotiable instrument within the Commercial Paper division of the Uniform Commercial Code ("UCC"), the writing must:

(1) be signed by the maker or drawer;

(2) contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer, except as authorized by this division;

(3) be payable on demand or at a definite time; and

(4) be payable to order or bearer.

13 Pa.C.S. § 3104.[6] The same division of the UCC recognizes a certificate of deposit as a type of negotiable instrument, 13 Pa.C.S. § 3104(b)(3), and that recognition is consistent with case law within the Commonwealth. *See Gordon v. Fifth Avenue Bank*, 308 Pa. 323, 326–27, 162 A. 825, 826 (1932) (certificate of deposit issued by bank in its general form is a negotiable instrument). Also, the negotiable character of an instrument is unaffected by a separate agreement between the parties. 13 Pa.C.S. § 3119(b).[7]

When a negotiable instrument is transferred from one party to another, the transfer of the instrument "vests in the transferee such rights as the transferor has therein." 13 Pa.C.S. § 3201(a). If the transferee took the instrument for value, in good faith, and without notice of the instrument being overdue or subject to any defenses, the transferee becomes a holder in due course. 13 Pa.C.S. § 3302(a). As a holder in due course, the transferee "may transfer or negotiate it and, except as otherwise provided in section 3603 (relating to payment or satisfaction), discharge it or enforce payment in

6. As recognized by the Superior Court in this case, the Uniform Commercial Code Act of November 1, 1979 was applicable at all times material to the transactions involved in this appeal. Thus, all references in this opinion are to that version of the UCC rather than the 1992 amendments to the UCC.

7. Section 3119(b) provides that "[A] separate agreement does not affect the negotiability of an instrument."

his own name." 13 Pa.C.S. § 3301. Moreover, to the extent that a person is a holder in due course, he takes the instrument free from "all claims to it on the part of any person." 13 Pa.C.S. § 3305(1). As the comments to this section note:

The language "all claims to it on part of any person" is substituted for "any defect in title of prior parties" in the original Section 57 in order to make it clear that the holder in due course takes the instrument free not only from any claim of legal title but also from all liens, equities or claims of any other kind.

Here, the parties do not dispute that the CD assigned by two of the Debtors (the Horbals) to Moxham met all the prerequisites of negotiability. Thus, the negotiability of the CD was completely unaffected by the separate mortgage agreement executed two weeks earlier between Debtors and Moxham. When the assignment documents for the CD were executed, Moxham became immediately vested in all of the Debtors rights in the CD. Also, since the loan Moxham extended constituted value and Moxham took the CD without notice of it being overdue or subject to any defenses, Moxham became a holder in due course of the CD. As such, the terms of the Assignment of Deposit gave Moxham the absolute right to enforce payment in its own name upon default. Therefore, the CD ceased being a personal asset of two of the Debtors after the Debtors defaulted on the loan secured by the CD. Accordingly, since the Deficiency Judgment Act is designed to protect a debtor's personal assets and the CD was not a personal asset of the Debtors on the date of the sheriff's sale, the Deficiency Judgment Act does not apply to this situation and Moxham was free to liquidate the CD in accordance with the terms of the assignment agreement.

Policy reasons also support the conclusion that the Deficiency Judgment Act does not apply in this situation. The effect of our decision today is that it provides protection against a default to a lender who obtains security for a loan. By giving the lender protection in cases of default, it will encourage lending and increase the ability to obtain a properly secured loan. This, in turn, will have the desired effect of encouraging the expansion of commerce.

 Moreover, the conclusion urged by appellants, i.e., applying the Deficiency Judgment Act, would lead to a result clearly not intended by the parties when they executed the Assignment of Deposit agreement. An assignment is a transfer of property or some other right from one person to another, and unless in some way qualified, it extinguishes the assignor's right to performance by the obligor and transfers that right to the assignee. *In re Purman's Estate*, 358 Pa. 187, 56 A.2d 86 (1948). Under the law of assignment, the assignee succeeds to no greater rights than those possessed by the assignor. *Himes v. Cameron County Construction Corp.*, 497 Pa. 637, 640, 444 A.2d 98, 100 (1982). In interpreting an assignment, it will ordinarily be construed in accordance with the rules of construction governing contracts and the circumstances surrounding the execution of the assignment document. *U.S. National Bank v. Campbell*, 354 Pa. 483, 47 A.2d 697 (1946).

 Here, the assignment appointed Moxham as the true and lawful attorney with all rights, title and interest in the CD. Also, the assignment gave Moxham the power to execute and to withdraw any or all of the CD upon default without any notice or further consent of the Horbals. Moreover, the assignment to Moxham could only be released upon agreement of the parties or upon full repayment of the indebtedness. As the Superior Court majority in this case aptly noted:

[A]pplying established contract law, the parties well could have provided for contingencies requiring other, additional action by the Bank [Moxham] prior to its exercise of a clear right to liquidate the CD that is contained in the agreement. They did not. When the economic realities of the transaction are considered, it is not surprising that the Bank sought, and obtained, additional security. When the debtors defaulted on the mortgage note, the Bank's act in liquidating the CD was predictable. Based on this language and the circumstance under which the CD was assigned to Moxham (to provide additional security for a loan), we must conclude that the assignment clearly and unambiguously

divested the Horbals of any ownership and control of the CD on the date of default and vested such rights in Moxham.

441 Pa.Super. at 472, 657 A.2d at 1265. Therefore, based on the language of the Assignment of Deposit and the circumstances under which the CD was assigned to Moxham, it is clear that the assignment agreement divested the Debtors (the Horbals) of any ownership and control of the CD on the date of default and vested such rights in Moxham.

In conclusion, we hold that the Deficiency Judgment Act does not apply to the present situation. Thus, in accordance with the assignment agreement, Moxham had the right to liquidate the CD after Debtors defaulted on the loan. Any other conclusion would render the additional security assigned by the Debtors to Moxham, via a contract, illusory since it would provide the Debtors with the means to circumvent a contractual pledge and Moxham would never be able to reach the security assigned to it to secure the indebtedness. Accordingly, for the reasons stated above, we affirm the order of the Superior Court holding that the Deficiency Judgment Act does not apply to the facts of this case.

FLAHERTY, C.J., and ZAPPALA, J., join this Opinion in Support of Affirmance.

NEWMAN, J., files an Opinion in Support of Reversal in which CAPPY and NIGRO, JJ., join.

### OPINION IN SUPPORT OF REVERSAL

I disagree with the Majority that a judgment creditor, who purchases the judgment debtor's real estate at a sheriff's sale, has the right to redeem a certificate of deposit (CD) assigned to it as additional security for the underlying debt without complying with the Deficiency Judgment Act (the Act), 42 Pa.C.S. § 8103.[1] Where the judgment creditor then fails to file a timely petition to fix the fair market value of the real property sold in compliance with the Act, the underlying debt is extinguished and the judgment creditor is precluded from

---

1. As stated by the Majority, the Deficiency Judgment Act provides:

redeeming the additional collateral security. Therefore, I respectfully dissent.

Neither party disputes the facts relevant to this appeal. On February 4, 1988, Moxham National Bank (Moxham) granted a loan of $120,000.00 to John Horbal, Anthony Horbal and Elaine Adams, d/b/a Potomac Associates II (Debtors, collectively). The Debtors executed a mortgage in favor of Moxham on property owned by the partnership at 502 Main Street in Johnstown, Pennsylvania, as collateral for the loan. The parties understood that the value of the property was not sufficient to fully secure the loan. Therefore, on February 18, 1988, John and Anthony Horbal executed in favor of Moxham an "Assignment of Deposits" as additional security for the loan due by the Debtors. Pursuant to the express terms of the Assignment of Deposits instrument, Anthony and John Horbal agreed to:

. ASSIGN, TRANSFER and PLEDGE to Moxham National Bank ... all of the Assignors' right, title and interest, on Certificate of Deposit Number 2005581 in the principal amount of Twenty Five Thousand and 00/00 Dollars ($25,-000)....

The assignment instrument further provided:

This Assignment and security interest is granted to the Bank to secure the prompt and unconditional payment and

Whenever any real property is sold, directly or indirectly, to a judgment creditor in execution proceedings and the price for which such property has been sold is not sufficient to satisfy the amount of the judgment, interests and costs and the judgment creditor seeks to collect the balance due on said judgment, interests and costs, the judgment creditor shall petition the court having jurisdiction to fix the fair market value of the real property sold.

42 Pa.C.S. § 8103(a). If the judgment creditor fails to file a petition to fix fair market value within six (6) months of the sale, upon petition of the debtor, the court will mark the judgment as satisfied. 42 Pa.C.S. § 8103(d); *First National Consumer Discount Co. v. Fetherman,* 515 Pa. 85, 527 A.2d 100 (1987).

The Act applies with equal force to actions *in rem* and *in personam. See Fetherman; Valley Trust Company of Palmyra v. Lapitsky,* 339 Pa.Super. 177, 488 A.2d 608 (1985); *Marine Midland Bank v. Surfbelt, Inc.,* 718 F.2d 611 (1983). But see *First Pennsylvania Bank v. Lancaster County Tax Claim Bureau,* 504 Pa. 179, 470 A.2d 938 (1983)(opinion announcing judgment of court).

performance when due of the following (all of which is herein called the "Indebtedness").

Any and all indebtedness, obligations and liabilities of Potomac Associates II to the Bank, now or hereafter existing or arising, due or to become due.

\* \* \*

Upon the complete payment of the indebtedness or upon the mutual agreement of the Assignors and the Bank, the Bank will release or partially release this Assignment.

Subsequently, the Debtors defaulted on the loan. Moxham initiated a mortgage foreclosure action in the Cambria County Court of Common Pleas. The court entered a judgment in favor of Moxham in the amount of $130,946.83 and issued a Writ of Execution on the judgment. Moxham then purchased the property at a sheriff's sale on December 14, 1990 for a bid price of $666.40.[2] On January 29, 1991, Moxham withdrew the CD and applied the proceeds, $26,437.00, to the remaining loan balance.

In November of 1991, Anthony and John Horbal assigned to Highland Financial, Ltd. and James R. Walsh (Appellants, collectively) their rights or causes of action, if any, relating to Moxham's withdrawal of the CD. Appellants subsequently demanded that Moxham return the proceeds realized on the withdrawal of the CD. Moxham refused to turn over the CD proceeds. Appellants then filed suit in the Court of Common Pleas of Cambria County (trial court) against Moxham seeking the value of the CD and other relief. The trial court granted summary judgment in favor of Moxham. The Superior Court affirmed.[3]

2. Moxham acknowledges that, in 1991, the appraised fair market value of the property was $57,500.00. In 1994, Moxham sold the property to a third party for the appraised value.

3. Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Pa. R.C.P. 1035(b). The record is to be viewed in the light most favorable to the nonmoving party. *Pennsylvania State University v.*

410

The Majority Opinion, authored by Mr. Justice Castille, affirms the Order of the Superior Court, holding that Moxham was free to redeem the CD without complying with the Deficiency Judgment Act, 42 Pa.C.S. § 8103. Based on the premise that the Assignment of Deposits transferred to Moxham all of the Debtors' rights and interests in the CD, the Majority Opinion turns on the negotiability of the CD pursuant to Article 3 of the Uniform Commercial Code (UCC), 13 Pa.C.S. §§ 3101–3122. Unlike the Majority, however, I believe the principal focus of our inquiry is not the negotiability of the CD, but the nature of the assignment of the CD. Contrary to the Majority's reliance on Article 3 of the UCC, relating to commercial paper, I believe this case is properly resolved with reference to Article 9, 13 Pa.C.S. §§ 9101–14, relating to secured transactions. Because I conclude that the assignment did not divest the Debtors of all their rights and interests in the CD, but merely granted Moxham a security interest in the CD, I conclude that Moxham was required to comply with the Deficiency Judgment Act.

It is well-settled that an assignment is a transfer of property, or a right or interest in property, and, *unless in some way qualified*, transfers the assignor's entire interest in the property. *Purman Estate*, 358 Pa. 187, 56 A.2d 86 (1948)(emphasis added). Likewise, an assignment, absolute on its face, may only give the assignee a qualified interest in the assigned property, commensurate with the debt or liability secured. *Seip v. Laubach*, 333 Pa. 225, 4 A.2d 149 (1939). In construing an assignment, courts may properly consider the circumstances attending the assignment. *United States National Bank in Johnstown v. Campbell*, 354 Pa. 483, 47 A.2d 697 (1946). Thus, parole evidence is admissible to establish that an assignment, absolute on its face, was intended to operate only as security for a debt. *Biddle v. Biddle*, 363 Pa. 426, 70 A.2d 281 (1950).

*County of Centre,* 532 Pa. 142, 615 A.2d 303 (1992). Summary judgment is appropriate only where the right to relief is clear and free from doubt. *Id.*

As defined in the UCC, a "security interest" is an interest in personal property that secures payment of an obligation. 13 Pa.C.S. § 1201. With certain exceptions, which are not relevant here, Article 9 of the UCC applies "to any transaction (regardless of its form) which is intended to create a security interest in personal property or fixtures including goods, documents, instruments, general intangibles, chattel paper or accounts ..." 13 Pa.C.S. § 9102(a), and to security interests created by contract, including assignments, 13 Pa.C.S. § 9102(b). An enforceable security interest is created when: (1) the collateral is in the possession of the secured party pursuant to an agreement or the debtor has signed a security agreement that contains a description of the collateral; (2) value has been given; and (3) the debtor has rights in the collateral. 13 Pa.C.S. § 9203(a); *see also Reuter v. Citizens & Northern Bank,* 410 Pa.Super. 199, 599 A.2d 673 (1991).

Here, by the express terms of the assignment instrument, Anthony and John Horbal assigned all of their right, title and interest in the CD to Moxham. Although the assignment instrument may appear absolute on its face, it is undisputed that the parties intended the CD to operate as additional security for the underlying $120,000.00 loan obligation. Moxham acknowledges that the Horbals executed the Assignment of Deposits as additional collateral security for the loan because the parties understood that the real estate was insufficient to fully secure the debt. Further, although the assignment instrument refers to a grant of title, it also refers to the grant of a *security interest* to Moxham to secure any and all indebtedness. The instrument identifies the CD (which was in Moxham's possession) and acknowledges receipt of valuable consideration for the assignment. Thus, the circumstances surrounding the execution of the assignment, and the assignment instrument itself, indicate that the assignment was not absolute—it did not divest the Debtors of all of their rights and interests in the CD, but merely granted Moxham a security interest in the CD as additional collateral for the loan. *Biddle; Purman Estate; Seip.* Because Moxham merely acquired a security interest in the CD, after the foreclosure sale,

Moxham was required to comply with the Deficiency Judgment Act before redeeming the additional collateral securing the debt. *First National Consumer Discount Co. v. Fetherman,* 515 Pa. 85, 527 A.2d 100 (1987), *Commonwealth Bank & Trust Co. v. Hemsley,* 395 Pa.Super. 447, 577 A.2d 627, *allocatur denied,* 525 Pa. 664, 583 A.2d 793 (1990); *Auerbach v. Corn Exchange National Bank & Trust Co.,* 148 F.2d 709 (1945).

Upon default of the loan obligation, the Assignment of Deposits expressly granted Moxham the right to withdraw funds from the CD account, but required Moxham to return the CD upon complete payment of the "indebtedness." By operation of the Deficiency Judgment Act, Moxham was required to file a petition to fix the fair market value of the real estate sold to determine the remaining "indebtedness" under the Assignment of Deposits. *Fetherman; Hemsley, Auerbach.* Moxham, however, failed to file a deficiency petition before redeeming the CD, within the six-month time limitation as provided in the Deficiency Judgment Act. 42 Pa.C.S. § 8103. Moxham's failure to file a deficiency judgment petition within six (6) months of the sale of the real property created an irrebuttable presumption that the foreclosure sale fully satisfied the Debtors' indebtedness. 42 Pa.C.S. § 8103(d); *Fetherman.* Thus, any "indebtedness," as defined in the Assignment of Deposits, was extinguished. Consequently, Moxham's withdrawal of funds from the CD violated the assignment agreement, which had merely granted Moxham a security interest for a debt that no longer existed. Appellants are, therefore, entitled to recover the CD proceeds.

The Majority asserts that policy considerations support the non-application of the Deficiency Judgment Act to this case. Pursuant to the Majority Opinion, however, a judgment creditor is capable of a double recovery, clearly in contravention of the purposes of the Deficiency Judgment Act. We clearly explained in *Fetherman:*

the Deficiency Judgment Act ... was enacted to remedy an inequity resulting to judgment debtors when the judgment creditor bought the debtor's property at a forced sale.

> Prior to adoption of the Act, a judgment creditor could purchase, at sheriff's sale, valuable real estate of the debtor for a nominal sum, (i.e. costs and taxes), and yet retain the full amount of his judgment. The debtor was to be credited only for the actual sum realized at the sale. Under the Deficiency Judgment Act, the creditor's judgment is to be reduced by the fair market value of the property bought by the creditor rather than the sale price.

*Id.* at 96, 527 A.2d at 105 (citations omitted). Thus, the purpose of the Act is to protect a debtor's personal assets when, as here, its real property is sold at a foreclosure sale for a purchase price far below its fair market value. Application of the Act, under these circumstances, does not render additional security "illusory," as stated by the Majority. Had Moxham complied with the Act, the judgment against the Debtors would only have been reduced by the fair market value of the property sold. Moxham would have then been entitled to recover the value of the CD. Only Moxham's failure to file a deficiency judgment petition voided this additional security.

Accordingly, I would reverse the Order of the Superior Court granting summary judgment in favor of Moxham and I would remand this case for resolution of the additional issues raised by Appellants, but not reached by the trial court.

CAPPY and NIGRO, JJ., join the opinion in support of reversal.