750 A.2d 299

**LEGAL CAPITAL, LLC., Appellant,**

v.

**MEDICAL PROFESSIONAL LIABILITY CATASTROPHE LOSS FUND, Appellee.**

Supreme Court of Pennsylvania.

Argued Nov. 15, 1999.

Decided May 1, 2000.

Charles I. Artz, Artz & Associates, Harrisburg, for Legal Capital, LLC.

Guy A. Donatelli, William H. Lamb, Lamb, Windle & McErlane, PC, West Chester, for Cat Fund.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION OF THE COURT

CASTILLE, Justice.

These consolidated appeals present this Court with the novel issues of whether the Medical Professional Liability

Catastrophe Loss Fund ("CAT Fund") is authorized and obligated to make direct payments to appellant Legal Capital, LLC., when a medical malpractice plaintiff obtains a judgment against the CAT Fund and the plaintiff assigns the interest in the judgment to Legal Capital and whether the CAT Fund enjoys sovereign immunity, thereby preventing Legal Capital from obtaining declaratory judgment on the issue of whether the CAT Fund must honor judgment assignments to Legal Capital.

The CAT Fund was created to provide excess insurance coverage to medical providers in the Commonwealth of Pennsylvania, and, as a result, settles or pays excess judgments arising from medical malpractice actions on behalf of medical providers. 40 P.S. § 1301.201.[1] The CAT Fund makes payments to plaintiffs only once a year on December 31 of each year. A plaintiff who settles or is awarded a judgment on or before August 31 of each calendar year is paid by the CAT Fund on December 31 of the year in which the settlement or judgment occurred. A plaintiff who settles or is awarded a judgment between September 1 and August 31 of a calendar year will be paid by the CAT Fund on December 31 of that following year. This payment construct results in a delay of payment of sixteen months for a plaintiff whose action concludes in September of any given year.

Legal Capital provides a source of alternative or accelerated funding to individuals who have settled lawsuits or have been awarded judgments where payment to the plaintiff from the CAT Fund will not be made until a date certain in the future. In exchange for providing immediate compensation to the plaintiff and/or his counsel, Legal Capital receives an assignment of entire or partial rights and interests in the settlement or judgment proceeds. Legal Capital has entered into agree-

---

1. The Healthcare Services Malpractice Act, 40 P.S. § 1301.102 provides: "It is the purpose of this act to make available professional liability insurance at a reasonable cost, and to establish a system through which a person who has sustained injury or death as a result of tort or breach of contract by a health care provider can obtain a prompt determination and adjudication of his claim and the determination of fair and reasonable compensation."

ments with a number of plaintiffs or counsel awaiting payment from the CAT Fund.[2] Each time Legal Capital entered into an assignment agreement with a plaintiff or counsel, Legal Capital provided the CAT Fund with written notice signed by the plaintiff or counsel stating the amount assigned to Legal Capital and directing that payment of that amount be made directly to Legal Capital. The CAT Fund has refused to make payment of the proceeds of the assigning plaintiffs' lawsuits directly to Legal Capital as assignee and has indicated to Legal Capital that it will not honor or acknowledge any assignments or make any payment directly to Legal Capital in the future.

As a result, Legal Capital filed two actions against the CAT Fund in the Commonwealth Court seeking equitable relief and declaratory judgment. The CAT Fund filed preliminary objections in both actions claiming that the CAT Fund is not authorized by the Healthcare Services Malpractice Act, 40 P.S. § 1301.101 *et seq.* (Act), to acknowledge and participate in the assignments between CAT Fund plaintiffs and Legal Capital and further, that the CAT Fund is entitled to sovereign immunity because Legal Capital failed to allege a cause of action that falls within one of the statutory exceptions to sovereign immunity. The Commonwealth Court sustained the CAT Fund's preliminary objections holding that the CAT Fund lacks statutory authority to participate in the assignment transactions and that the CAT Fund is an executive agency entitled to sovereign immunity because this action does not fall within any of the exceptions to sovereign immunity. We disagree with both holdings and therefore reverse.

**2.** The consolidated appeals raise materially identical issues pertaining to assignments from plaintiffs and/or their counsel to Legal Capital in different calendar years. The appeal docketed at 185 M.D. Appeal Docket 1998 involves at least five assignments to Legal Capital of payments due from the CAT Fund on December 31, 1998. The second appeal, docketed at 10 M.D. Appeal Docket 1999, involves one assignment of a payment due to an attorney from the CAT Fund on December 31, 1999. Because these issues are recurring and likely to evade review if normal rules of mootness are applied due to the timetable of assignments and payments, we will decide these appeals on the merits. *See Commonwealth v. Joint Bargaining Committee,* 484 Pa. 175, 179, 398 A.2d 1001, 1003 (1979).

■ The CAT Fund initially contends that the Act does not authorize it either to participate in or to acknowledge the assignment of portions of medical malpractice settlements or judgments. Specifically, the CAT Fund argues that its statutory mandate is to pay all awards, judgments and settlements against health care providers when those awards, judgments or settlements exceed the health care providers' primary insurance coverage. 40 P.S. § 1301.701(d). As such, the CAT Fund asserts that its objective is the protection of *claimants* in medical malpractice actions. A "[c]laimant" is defined in the Act as "a patient and includes a patient's immediate family, guardian, personal representative or estate." 40 P.S. § 1301.103. This definition, the CAT Fund urges, does not include or contemplate an assignee such as Legal Capital. Relying on *Judge v. Allentown and Sacred Heart Hospital Center*, 78 Pa. Cmwlth. 373, 467 A.2d 899 (1983), *rev'd on other grounds*, 506 Pa. 636, 487 A.2d 817 (1985), the CAT Fund asserts that it may only exercise those powers that have been expressly conferred upon it by clear and unmistakable language. Because the Act does not specifically authorize the CAT Fund to participate in or to acknowledge assignments of awards in malpractice actions, the CAT Fund argues that it is prohibited from doing so.

Legal Capital counters that the assignment transactions do not require the CAT Fund's participation as the CAT Fund is not a party to the assignments; rather, the CAT Fund is merely asked to acknowledge that the valid assignments exist by paying directly to Legal Capital the amounts to which Legal Capital is entitled under valid assignments. We are persuaded by Legal Capital's reasoning that, as a non-party to the assignment transactions, the CAT Fund is not a participant in the transactions. Indeed, by the time Legal Capital informs the CAT Fund of the assignment, the assignment transaction has already been completed. Therefore, this Court is not required to determine whether the Act permits the CAT Fund to participate in the assignment transactions. Legal Capital argues further that nothing in the Act prohibits the CAT Fund from acknowledging the assignments and

paying directly to Legal Capital the assigned amounts. Legal Capital is certainly correct that there is no statutory provision prohibiting the CAT Fund from acknowledging the assignments or making payments to Legal Capital as the assignee.[3] Nor does the Act specifically prohibit a successful plaintiff from assigning the proceeds of a medical malpractice action. *Cf. Lotto Jackpot Prize of December 3, 1982*, 533 Pa. 402, 406, 625 A.2d 637, 638 (1993) ("section 8 of the Lottery Law proscribes voluntary assignments of prize winnings").

■ Finding no statutory prohibition to the CAT Fund recognizing these assignments, we conclude that common law principles of assignment govern the duties and obligations of the CAT Fund, just as they govern the conduct of other entities similarly situated. "An assignment is a transfer of property or some other right from one person to another, and unless in some way qualified, it extinguishes the assignor's right to performance by the obligor and transfers that right to the assignee." *Horbal v. Moxham National Bank*, 548 Pa. 394, 406, 697 A.2d 577, 583 (1997). Here, medical malpractice plaintiffs and/or their attorneys legitimately assigned their rights to settlement funds or awards to Legal Capital in exchange for immediate payment of cash.[1] Applying common law principles of assignment, an assignment to Legal Capital extinguishes the assignor's right to payment from the CAT Fund and transfers that right to Legal Capital. The CAT Fund's refusal to recognize the legal ramifications of the assignments and its refusal to pay Legal Capital interferes both with the contractual relationship between Legal Capital and the assigning plaintiffs as well as with Legal Capital's property rights. In addition, this refusal burdens the assignor's own right to transfer his interest in a settlement or judgment. Because the Act does not prohibit either the assignment of settlements or awards or the CAT Fund from

3. Legal Capital apparently has offered to pay to the CAT Fund any additional costs incurred by the CAT Fund in issuing additional checks to Legal Capital, particularly in cases where a plaintiff has made a partial assignment to Legal Capital.

4. The CAT Fund has not challenged the validity of the assignments but rather asserts its lack of authority to comply.

acknowledging the assignments and making payment directly to the assignee, the CAT Fund is obligated to pay the assigned settlements and awards to Legal Capital.[5]

The CAT Fund's second argument is that, as an executive agency of the Commonwealth, it is entitled to sovereign immunity pursuant to 42 Pa.C.S. § 8501. To the extent that Legal Capital only seeks declaratory judgment that Legal Capital has a right to receive the assigned funds and that the CAT Fund has an obligation to pay the funds to Legal Capital, sovereign immunity does not apply because it is not applicable to declaratory judgment actions. *See Wilkinsburg Police Officers Ass'n v. Commonwealth of Pennsylvania*, 535 Pa. 425, 431, 636 A.2d 134, 137 (1993) (sovereign immunity poses no bar to counts of a complaint where the counts only seek a declaration that certain provisions of an Act are unconstitutional); *Fawber v. Cohen*, 516 Pa. 352, 360, 532 A.2d 429, 434 (1987) ("Although declaratory relief does affirmatively affect the functioning of state officials administering our statutory law, it does not compel an affirmative act," and sovereign immunity does not apply).

Legal Capital also seeks equitable relief requiring the CAT Fund to make payment of assigned funds directly to Legal Capital. Sovereign immunity applies only where the action filed seeks to compel affirmative action on the part of the Commonwealth or Commonwealth agency or to obtain money damages; it does not apply where the plaintiff seeks to restrain the agency from performing an affirmative act. *Wilkinsburg*, 535 Pa. at 430–31, 636 A.2d at 137. Clearly, Legal Capital does not seek to obtain money damages from the CAT Fund itself in the instant action. The funds that Legal Capital seeks are funds the CAT Fund is already affirmatively

**5.** The CAT Fund expresses concern that requiring it to acknowledge the assignments exposes it to "risky, questionable transaction[s] without any safeguards" to ensure that the settlement or judgment reaches the claimant. Nothing in our holding, however, precludes the CAT Fund from requiring proof of the existence and validity of a particular assignment before honoring it. Assignments are common practice in commercial transactions; questions of proof should not be difficult to resolve.

obligated to pay. The sole issue is to whom those funds should be paid. Therefore, sovereign immunity does not bar the instant action on that basis.

The CAT Fund contends that Legal Capital is seeking to compel the CAT Fund to take affirmative action and pay the assigned funds to Legal Capital. Legal Capital, on the other hand, argues that it is only attempting to restrain the CAT Fund from paying the wrong party. We agree with Legal Capital that the goal in the instant action is to restrain the CAT Fund from paying the assigning plaintiffs or counsel rather than an action to compel any affirmative act on the part of the CAT Fund. Therefore, the doctrine of sovereign immunity does not bar Legal Capital's action.

Accordingly, the orders of the Commonwealth Court sustaining the CAT Fund's preliminary objections are reversed, and Legal Capital's complaints for equitable relief and declaratory judgment are reinstated. These matters are remanded to the Commonwealth Court for entry of judgment in favor of Legal Capital consistent with this opinion.

Justice SAYLOR files a concurring and dissenting opinion in which Justice NEWMAN joins.

SAYLOR, Justice, concurring and dissenting.

I join the majority opinion insofar as it concludes that these declaratory judgment proceedings were improperly dismissed on the CAT Fund's preliminary objections. Rather than proceeding to the merits of the controversy, however, I would remand the matter to the Commonwealth Court for further proceedings as appropriate, since I would not at this juncture foreclose the CAT Fund from developing an evidentiary record to support its claim that preclusion of assignments in this context is a necessary corollary to the legislative scheme essential to protect the integrity and effective administration of the statutory claims procedure.

Justice NEWMAN joins this concurring and dissenting opinion.