NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-4668
_____

LEXINGTON INSURANCE COMPANY

v.

3039 B STREET ASSOCIATES, INC; INVESTORS TRUST LLC;
MARC J GROSSMAN ASSOCIATES,


3039 B Street Associates, Inc.,
*Appellant*


On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-12-cv-06810)

District Judge:  Honorable Joel H. Slomsky
_____

Argued: September 11, 2015

Before:  VANASKIE, SLOVITER, and RENDELL *Circuit Judges.*

(Opinion filed: September 22, 2015)

Steven F. Marino, Esq.  **[Argued]**
Marino & Conroy
301 Wharton Street
Philadelphia, PA  19147

*Attorney for Appellant*

Kevin F. Buckley, Esq.
Daniel M. O'Connell, Esq.
Philip C. Silverberg, Esq.
Mound, Cotton, Wollan & Greengrass
One New York Plaza
9th Floor
New York, NY  10004

Patricia A. Fecile-Moreland, Esq.
Marks, O'Neill, O'Brien, Doherty & Kelly
1800 John F. Kennedy Blvd.
Suite 1900
Philadelphia, PA  19103

*Attorneys for Appellee Lexington Insurance Company*

Jonathan J. Bart, Esq.  **[Argued]**
Daniel S. Bernheim, III, Esq.
Rachel C. Heinrich, Esq.
Wilentz, Goldman & Spitzer
Two Penn Center Plaza
Suite 910
Philadelphia, PA  19102

*Attorneys for Appellee Investors Trust LLC*

2

_____

OPINION[*]

_____


SLOVITER, _Circuit Judge_.

This appeal concerns whether a mortgagor or mortgagee is entitled to hazard insurance proceeds in excess of a deficiency judgment for damage that occurred to a property prior to foreclosure. 3039 B Street Associates, Inc. ("3039 B"), a former mortgagor, appeals from the District Court's summary judgment order awarding Investors Trust LLC ("Investors"), the mortgagee, proceeds of an insurance payout for damage to a warehouse that 3039 B lost in foreclosure proceedings. For the following reasons, we will reverse the District Court's order to the extent that it awards Investors the proceeds of the insurance policy in excess of the deficiency judgment it held against 3039 B, and remand for entry of an order awarding these proceeds to 3039 B.

I.

3039 B previously owned real property consisting of a warehouse in Philadelphia. Investors was the mortgagee of the property and held a note for $250,000. 3039 B was required to maintain a hazard insurance policy on the property and it procured a policy

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

3

from the Lexington Insurance Company ("Lexington"). The relevant language of the mortgage states:

> . . . In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. . . .
>
> Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged . . . . If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. . . .
>
> . . . If . . . the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

Dist. Ct. Doc. No. 7, Ex. B. The policy from Lexington included a standard mortgage clause, which required Lexington to pay the proceeds of the policy to Investors, as mortgagee, in the event of a loss.

3039 B's property was damaged by vandals in 2010. Lexington found that the value of the loss claim was $206,349.72 and initially paid $66,507.74 to Investors, which Investors applied to 3039 B's note.

Before Lexington issued the remainder of the insurance proceeds, 3039 B defaulted on the mortgage and Investors initiated foreclosure proceedings. Investors purchased the property at the sheriff's sale and the state court determined, pursuant to Pennsylvania's Deficiency Judgment Act, 42 Pa. Cons. Stat. § 8103, that the fair market value of the property was $250,000. The court determined that Investors' damages were

4

$287,410.57[1] and entered a deficiency judgment of $37,410.57 against 3039 B.

Lexington agreed that it was obligated to pay $130,041.98[2] and filed an interpleader action pursuant to Federal Rule of Civil Procedure 22 to determine whether 3039 B or Investors was entitled to the insurance proceeds.[3] Both 3039 B and Investors moved for summary judgment. The District Court ruled that 3039 B was not entitled to the insurance proceeds because the foreclosure on the property terminated its interest in the property. Thus, the court determined that Investors was entitled to the funds in excess of the deficiency judgment. This timely appeal followed.

## II.[4]

### A.

Our review of a district court's grant or denial of summary judgment is plenary. *Brown v. J. Kaz, Inc.*, 581 F.3d 175, 179 (3d Cir. 2009). A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

As this case arises through diversity jurisdiction, we must apply Pennsylvania law and "'[i]n the absence of any clear precedent of the state's highest court, we must predict

---

[1] These damages include the principal owed, interest, late fees, and attorneys' fees.
[2] Lexington determined that $130,041.98 was due under the policy by subtracting the already disbursed payments, $66,307.74, and the policy's deductible, $10,000, from the calculated damage amount of $206,349.72. The record, however, shows that the sum of payments already disbursed by Lexington is $66,507.74.
[3] This action included several crossclaims between 3039 B, Investors, Lexington, and the insurance adjuster. As the only issue on appeal concerns 3039 B and Investors, our discussion is limited to which party is entitled to insurance proceeds from the 2010 loss.
[4] The District Court had jurisdiction pursuant to 28 U.S.C. § 1332. We exercise jurisdiction pursuant to 28 U.S.C. § 1291.

how that court would resolve the issue.'" *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 220-21 (3d Cir. 2008) (alteration in original) (quoting *Yurecka v. Zappala*, 472 F.3d 59, 62 (3d Cir. 2006)). Intermediate state appellate court decisions are "a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by otherwise persuasive data that the highest court of the state would decide otherwise." *Comm'r of Internal Revenue v. Bosch's Estate*, 387 U.S. 456, 465 (1976) (internal quotation marks and citation omitted).

## B.

The District Court correctly noted that "the Pennsylvania Supreme Court has yet to determine the effect of foreclosure on a mortgagee's right to claim insurance proceeds," and therefore, we must predict how the Supreme Court of Pennsylvania would rule on this issue. App. at 35. The District Court relied on the Pennsylvania Superior Court's opinion in *Laurel National Bank v. Mutual Benefit Ins. Co.*, 444 A.2d 130, 133 (Pa. Super. Ct. 1982) [hereinafter "*Laurel*"] for the proposition that 3039 B's interest in the insurance proceeds was extinguished by Investors' foreclosure on the property. Although we agree that *Laurel* is useful to predict how the Supreme Court of Pennsylvania would rule, we do not agree on the opinion's application to this case.

In *Laurel*, the issue was whether the mortgagors, who held a homeowners' insurance policy, or the mortgagee, were entitled to the proceeds from that policy for a fire that occurred after the mortgagee foreclosed on and purchased the property at the sheriff's sale. 444 A.2d at 131. The *Laurel* court held that "[t]he mortgagor's rights to any insurance proceeds were cut off by foreclosure but the mortgagee's rights to any

6

insurance proceeds increased while remaining insured under the policy by the standard mortgage clause." *Id.* at 133. Importantly, the *Laurel* court noted

> that where the loss precedes the foreclosure, the rule is different since the mortgagee may satisfy the mortgage indebtedness by two different means. First he may recover up to the limits of the policy the full amount of the mortgage debt under the standard mortgage clause. The second alternative is to satisfy the mortgage debt through foreclosure and then recover the balance due, if there is any, under the insurance policy as owner.

*Id.* at 133-34 (citing *Nationwide Mut. Fire Ins. Co v. Wilborn*, 279 So. 2d 460 (Ala. 1973); *Cont'l Ins. Co. of N.Y. v. Rotholz*, 133 So. 587 (Ala. 1931)). Moreover, where the loss precedes the foreclosure, the sheriff's sale and the subsequent "'satisfaction of the debt takes into account the damaged conditions of the property at the time of the foreclosure. [T]o allow recovery of insurance proceeds by the mortgagee after full satisfaction of the debt would amount to [the] mortgagee's unjust enrichment.'" *Id.* at 134 (quoting *Wilborn*, 279 So. 2d at 464) (first alteration in original).

The principal difference between the mortgagee in *Laurel* and Investors is that the mortgagee in *Laurel* assumed ownership of the property before the loss, and therefore its "insurable interest was that of owner and not that of mortgagee."[5] *Id* at 134 n.1. Accordingly, *Laurel* supports our prediction that the Supreme Court of Pennsylvania

---

[5] Other jurisdictions have also concluded that a mortgagee may not recover more than the amount of indebtedness for losses sustained prior to foreclosure. *See, e.g., Lenart v. Ocwen Fin. Corp.*, 869 So. 2d 588, 591 (Fla. Dist. Ct. App. 2004) (citing *Wilborn* and holding that in a pre-foreclosure loss "[i]f the mortgagee elects to foreclose on the property and the foreclosure sale does not bring the full amount of the mortgage debt, then the mortgagee may recover the *deficiency* under the insurance policy as owner."); *W. Employers Ins. v. Bank of Ravenswood*, 512 N.E. 2d 9, 10-11 (Ill. App. Ct. 1987) (same).

would rule that where a loss precedes foreclosure, a mortgagee is entitled to insurance proceeds to satisfy any deficiency still existing after foreclosure. However, we predict that the Supreme Court would rule that a mortgagor is entitled to the proceeds in excess of a deficiency judgment because the foreclosure sale of the property took into account the condition of the property after the loss.

C.

Investors argues that the express language of the mortgage contract provides that in the event of a foreclosure, 3039 B's interest in any insurance proceeds resulting from damage to the property prior to foreclosure shall be acquired by Investors after foreclosure. Pennsylvania contract law principles require that we interpret a contract by its express language when it is clear and unequivocal, and in a way that "give[s] effect to all of the provisions therein." *Capek v. Devito*, 767 A.2d 1047, 1050 (Pa. 2001) (internal citation omitted). The parties have not cited, and we have not found, a Pennsylvania case concerning the interpretation of this standard clause's assignment of insurance rights after foreclosure. However, other courts have considered this clause and determined that it is "collateral security for the mortgage debt" and "[a]n assignment made as collateral security for a debt gives the assignee only a qualified interest" up to the amount of indebtedness, "even though the assignment is absolute on its face." *Emmons v. Lake States Ins. Co.*, 484 N.W. 2d 712, 714 (Mich. Ct. App. 1992); *see also Fire Ins. Exch. v. Bowers*, 994 S.W. 2d 110, 112-14 (Mo. Ct. App. 1999) (same and commenting that "[h]ad the property brought less [than the amount of indebtedness upon foreclosure], the claim of the bank would remain, but not exceeding the balance then owed.").

8

We predict that the Supreme Court of Pennsylvania would interpret the language of this clause to secure 3039 B's debt owed with the insurance policy as collateral. Accordingly, Investors could recover to the extent of the indebtedness from the insurance policy, but not the insurance proceeds in excess of the deficiency judgment.

III.

For the foregoing reasons, the judgment of the District Court is reversed and remanded with instructions to enter a judgment in the amount of $92,631.41 in favor of 3039 B.[6]

---

[6] Investors also urges that *Horbal v. Moxham Nat'l Bank*, 697 A.2d 577 (Pa. 1997), and *Option One Mortgage Corp v. Fitzgerald*, 687 F. Supp. 2d 520 (M.D. Pa. 2009), control this case and provide a theory whereby it should be entitled to the rest of the insurance proceeds. We disagree. *Horbal* and *Option One* address the situation in which a mortgagee forecloses on the subject property and does not bring a deficiency judgment action. Those cases held that while the penalty for not doing so is the inability to proceed against the personal assets of the debtor for the satisfaction of the debt, a CD and insurance proceeds, respectively, were not vested in the debtor at the time of foreclosure and therefore were not personal assets of the debtor. Thus, the mortgagee was entitled to apply them to reduce the debt. Notably, the debt was the full amount owed at the time of foreclosure, not reduced by a deficiency judgment. Here, the mortgagee, having proceeded under the Deficiency Judgment Act, has had its debt reduced by the value of the property and has no claim to any property once the $37,410.57 in remaining debt was satisfied. Thus, *Horbal* and *Option One* address a totally different fact pattern and are not relevant let alone controlling here.