535 Pa. 425 (1993)
636 A.2d 134
The WILKINSBURG POLICE OFFICERS ASSOCIATION By and Through its Trustees Ad Litem, Jerry HARDER, Hank Reibold and Thomas Kocon, Appellants,
v.
The COMMONWEALTH of Pennsylvania, Commonwealth of Pennsylvania Department of Community Affairs and the Borough of Wilkinsburg, Appellees.
Supreme Court of Pennsylvania.
Argued May 6, 1991.
Decided December 30, 1993.
*426 Anthony C. Busillo, II, Gary M. Lightman, Harrisburg, for appellants.
W. Timothy Barry, Pittsburgh, for Borough of Wilkinsburg.
Andrew H. Cline, Harrisburg, Ernest R. Closser, III, Deputy Gen. Counsel, William W. Warren, Jr., Chief of Litigation, Richard D. Spiegelman, Executive Deputy Gen. Counsel, for appellees.
*427 Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, PAPADAKOS and CAPPY, JJ.

OPINION
NIX, Chief Justice.
This case involves a challenge by the Wilkinsburg Police Officers Association ("Association") to the Financially Distressed Municipalities Act, commonly referred to as Act 47.[1] The Association claims that Act 47 is unconstitutional on its face and that it is being implemented in a way that violates its contractual rights under a collective bargaining agreement. The Association asserted these claims in a five-count action brought against the Appellees herein, who are the Borough of Wilkinsburg ("Borough"), the Commonwealth of Pennsylvania, and the Commonwealth's Department of Community Affairs. The Commonwealth Court, which considered this matter under its original jurisdiction, dismissed all counts except the contractual claim against the Borough and relinquished jurisdiction, 129 Pa.Cmwlth. 47, 564 A.2d 1015. The Court took this action after sustaining all preliminary objections filed by the Appellees. Today, we consider the Commonwealth Court's disposition of these preliminary objections.
Before examining the lower court decision, we briefly summarize the statute in question. As its formal name implies, Act 47 is designed to offer relief to any city that is considered to be financially distressed. The Secretary of the Department of Community Affairs ("Secretary") designates a city as being in financial distress upon finding that certain specified conditions are met. 53 P.S. § 11701.201. Within thirty days after making this designation, the Secretary must appoint a coordinator to prepare a plan addressing the city's financial problems. 53 P.S. § 11701.221.
The statute specifies what the coordinator's plan may cover and indicates what steps must be taken before a city acts on the plan. Among the contents a plan can include are revenue *428 projections, recommendations for eliminating deficits, possible changes to collective bargaining agreements, and an analysis of economic conditions. 53 P.S. § 11701.241. Twenty-five days after a public meeting is held to receive comments on the coordinator's plan, the city must decide whether to adopt and implement the plan in its entirety or to reject it. 53 P.S. § 11701.245.
In the event that either the governing body or the chief executive officer of the municipality fails to do what is necessary to adopt or implement the coordinator's plan, the municipality must develop an alternative plan which the Secretary must determine as being capable of overcoming the city's financial distress. 53 P.S. § 11701.246. If the Secretary determines that the plan will not accomplish this goal, or if the city refuses to adopt the coordinator's plan, then the city suffers the suspension of certain funds it would otherwise receive from the Commonwealth. 53 P.S. §§ 11701.248, 11701.251, 11701.264.[2]
Proceeding under Act 47, the Borough applied for financially distressed status and was designated as such. A fiscal recovery plan was later developed, and the Borough Council adopted it by passing an ordinance. Subsequently, the Association initiated this suit.
In Count I of its complaint, the Association contends that the manner in which the Borough has implemented its financial recovery plan violates many of the provisions of the collective bargaining agreement which exists between the Association and the Borough. The Association requests: a) a declaration that the recovery plan represents an unconstitutional violation and/or impairment of the Association's contractual rights; b) that the plan be set aside or modified to the extent that it abridges the Association's contractual rights; c) damages to officers who have been harmed by implementation of the plan; d) costs; and e) any other appropriate relief.
*429 In Count II, the Association challenges sections 248, 251 and 264 of the Act,[3] the three provisions triggering the suspension of certain Commonwealth funds to any financially distressed municipality which does not adopt an approved recovery plan. The Association alleges that these three sections operate in a way that "mandates or coerces municipal compliance with plans developed by the [Department of Community Affairs] or its designated agent(s)." This, the Association contends, represents a violation of Article III, Section 31 of the Pennsylvania Constitution, which prohibits the General Assembly from delegating powers over certain governmental functions to "any special commission, private corporation or association." Pa. Const. art. III, § 31. For this reason, the Association seeks a declaration that sections 248, 251 and 264 of Act 47 are unconstitutional.
In Counts III through V, the Association levels its constitutional attack against section 252. This section specifically provides that "[a] collective bargaining agreement or arbitration settlement executed after the adoption of a plan shall not in any manner violate, expand or diminish its provisions." 53 P.S. § 11701.252. In Count III, the Association contends that section 252 violates the nondelegation clause of Section 31 of Article III of the Pennsylvania Constitution because it allegedly "prohibits a municipality from entering into collective bargaining agreements and/or arbitration awards pursuant to existing State law." For this reason, the Association seeks a declaration that section 252 of Act 47 is unconstitutional.
In Count IV, the Association claims that section 252 is a "bar to any prospective bargaining agreement or arbitration awards." The Association contends that this violates the second clause of Article III, Section 31 of the Pennsylvania Constitution, which authorizes the General Assembly to subject collective bargaining agreements between policemen and their public employers to binding arbitration. The Association seeks a declaration that section 252 of Act 47 is unconstitutional.
*430 Finally, in Count V, the Association alleges that section 252 "purports to negate or void any collective bargaining agreement or arbitration settlement executed after the adoption of Act 47." The Association contends that this makes section 252 a "special law regulating labor" in violation of Article III, Section 32(7) of the Pennsylvania Constitution. The Association seeks a declaration that section 252 of Act 47 is unconstitutional.
The Commonwealth and the Department of Community Affairs ("Commonwealth Appellees") jointly filed seven preliminary objections. The first demurred as to all counts on the basis that the Commonwealth Appellees are sovereignly immune from suit. The second objection was that the Commonwealth Court lacked jurisdiction over the contractual claim raised in Count I. Each of the remaining five objections was based on the alleged failure of the Association to state a cause of action for which the relief it requested in each of its five counts could be granted. The Borough demurred on the same basis to the constitutional claims raised in Counts II through V. In addition, the Borough raised a preliminary objection to Count I on the basis that the Commonwealth Court lacked subject matter jurisdiction over the contractual claim asserted therein. The Commonwealth Court sustained all preliminary objections that were raised. We now proceed to review that decision.
First, we examine whether the lower court properly ruled on the claim of sovereign immunity raised by the Commonwealth Appellees. The Commonwealth Appellees argued that no part of the action could be maintained against them because the legislature has neither waived immunity with respect to actions seeking declaratory judgments, nor waived immunity with respect to actions which seek to compel affirmative action or to obtain monetary damages. The Commonwealth Court properly determined that this objection could only be sustained in part.
This Court has stated that
[t]he distinction is clear between suits against the Commonwealth which are within the rule of its immunity and suits to *431 restrain officers of the Commonwealth from enforcing the provisions of a statute claimed to be unconstitutional. Suits which seek to compel affirmative action on the part of state officials or to obtain money damages or to recover property from the Commonwealth are within the rule of immunity; suits which simply seek to restrain state officials from performing affirmative acts are not within the rule of immunity.
Fawber v. Cohen, 516 Pa. 352, 360, 532 A.2d 429, 433-34 (1987) (citation omitted). Guided by this rule, the Commonwealth Court correctly concluded that sovereign immunity poses no bar to Counts II through V since these counts only seek a declaration that certain provisions of Act 47 are unconstitutional. The Commonwealth Court also properly ruled that sovereign immunity only erects a bar to Count I insofar as the Association seeks damages and costs against the Commonwealth Appellees; sovereign immunity poses no bar to the Association's prayer for injunctive relief.
Next, we review the lower court's disposition of the individual demurrers lodged by the Commonwealth Appellees. The standard by which the lower court had to conduct its examination has been recently summarized by this Court. When ruling on objections in the nature of a demurrer, a court must overrule the objection if the complaint pleads sufficient facts which, if believed, would entitle the petitioner to relief under any theory of law. Gabel v. Cambruzzi, 532 Pa. 584, 588, 616 A.2d 1364, 1367 (1992); Mazzagatti v. Everingham by Everingham, 512 Pa. 266, 272, 516 A.2d 672, 675 (1986). Our review of the Association's petition convinces us that there is no theory under which it can obtain the declaratory relief it seeks.
First, in Count I, the Association did not plead sufficient facts to make out a breach of contract claim against the Commonwealth Appellees. The complaint failed to allege that either the Commonwealth or the Department of Community Affairs is a party to the collective bargaining agreement that is alleged to have been violated. Therefore, the Commonwealth *432 Appellees' demurrer to Count I was properly sustained.
The Commonwealth Court correctly sustained the demurrer raised against Count II. In that count, the Association claimed that sections 248, 251 and 264 of Act 47[4] violate the Pennsylvania Constitution in that they operate in a way that is prohibited by Article III, Section 31. It states, in relevant part, that
[t]he General Assembly shall not delegate to any special commission, private corporation or association, any power to *433 make, supervise or interfere with any municipal improvement, money, property or effects, whether held in trust or otherwise, or to levy taxes or perform any municipal function whatever.
Pa. Const. art. III, § 31.
The Commonwealth Court determined that the Association's petition did not state a cause of action. In the view of the lower court, Act 47 does not unconstitutionally delegate fiscal authority because the municipality's governing body retains the decision-making authority. This is both correct and sufficient to conclude that the Association is not entitled to the declaratory relief it seeks under any theory of law.
The Association's main argument with regard to Count II is that the Borough is subservient to and controlled by the Secretary because, until the Borough adopts a financial recovery plan that meets with her approval, the Borough forfeits Commonwealth funds. This argument has no merit. The Secretary does not enjoy control or supervisory authority over the Borough. Nor is the Borough required to adopt a recovery plan approved by the Secretary. Since the Borough has not surrendered any of its decision-making authority, no delegation of power has occurred.
The Borough's decision-making power is not reduced by Act 47's inclusion of a mechanism under which Commonwealth funds may be suspended. The fund-suspension provisions only represent a set of conditions the Borough has agreed to accept in exchange for receiving the financial and technical assistance and relief available under Act 47.[5] To the extent the relationship between the Secretary and the Borough is governed by an agreement into which the Borough has voluntarily entered, this case is analogous to the facts in Local 22 v. Commonwealth, 531 Pa. 334, 613 A.2d 522 (1992). In that case, this Court upheld the constitutionality of an act which *434 authorized a newly created agency to enter into agreements with any first class city seeking the agency's assistance in extricating itself from financial difficulties. We reasoned that such an agreement was explicitly authorized by Article IX, Section 5 of the Pennsylvania Constitution.[6] This reasoning applies with equal force here and constrains us to affirm the lower court's conclusion that sections 248, 251 and 264 of Act 47 do not violate the Pennsylvania Constitution. Therefore, the demurrer to Count II was properly sustained.
The Association did not plead sufficient facts in Count III to establish that section 252 of Act 47 violates the nondelegation clause of Article III, Section 31 of the Pennsylvania Constitution. While incorporating the facts previously averred in the petition, Count III pleads one fact. It quotes section 252, which provides that "[a] collective bargaining agreement or arbitration settlement executed after the adoption of a plan shall not in any manner violate, expand or diminish its provisions." 53 P.S. § 11701.252.
As indicated above, the Commonwealth Court concluded, and we agree, that the Borough has not delegated any power to the Secretary. To the contrary, the Borough retains its decision-making authority. Therefore, the Association cannot obtain the declaratory relief it seeks under any theory of law, and the Commonwealth Court acted properly in sustaining the demurrer to Count III.
The Association did not plead sufficient facts in Count IV to establish that section 252 of Act 47 violates the clause in Article III, Section 31 relating to binding arbitration of collective bargaining disputes. The complaint quotes the relevant constitutional passage, which reads:

*435 Notwithstanding the foregoing limitation or any other provision of the Constitution, the General Assembly may enact laws which provide that the findings of panels or commissions, selected and acting in accordance with law for the adjustment or settlement of grievances or disputes or for collective bargaining between policemen and firemen and their public employers shall be binding upon all parties and shall constitute a mandate to the head of the political subdivision which is the employer, or to the appropriate officer of the Commonwealth if the Commonwealth is the employer, with respect to matters which can be remedied by administrative action, and to the lawmaking body of such political subdivision or of the Commonwealth, with respect to matters which require legislative action, to take the action necessary to carry out such findings.
Pa. Const. art. III, § 31 (emphasis added). This provision clearly states that the General Assembly may pass laws subjecting collective bargaining agreements with policemen and firemen to binding arbitration. Since Article III, Section 31 does not require arbitration, it imposes no constraints on the General Assembly's freedom to pass laws that may limit the ability of the Commonwealth or any of its political subdivisions to enter collective bargaining agreements or to subject them to binding arbitration. As a result, even if section 252 of Act 47 operates as a bar to prospective bargaining agreements or arbitration awards, as the Association alleges, it would not violate Article III, Section 31 of the Pennsylvania Constitution. Therefore, the Commonwealth Court properly concluded that Count IV fails to state a cause of action for which relief can be granted.
The Association did not plead sufficient facts in Count V to establish that section 252 of Act 47 violates Article III, Section 32(7) of the Pennsylvania Constitution. It provides that:
The General Assembly shall pass no local or special law in any case which has been or can be provided for by general law and specifically the General Assembly shall not pass any local or special law:
*436 . . . .
7. Regulating labor, trade, mining or manufacturing.
Pa. Const. art. III, § 32(7). We have held that this constitutional prohibition requires that any statutory classification have a rational relationship to a proper state purpose. Tosto v. Pennsylvania Nursing Home Loan Agency, 460 Pa. 1, 14, 331 A.2d 198, 204 (1975). The Commonwealth Court concluded that section 252 meets this test, and we agree.
Clearly, the statute seeks to achieve a proper state purpose. The declared intent behind Act 47 is to "ensure fiscal integrity of municipalities while leaving principal responsibility for conducting the governmental affairs of a municipality . . . to the charge of its elected officials. . . ." 53 P.S. § 11701.102. The statutory classification is rationally related to the stated purpose of Act 47. Only those municipalities in poor financial condition are subject to the Act. Moreover, it is reasonable to forbid those municipalities from entering collective bargaining agreements that are inconsistent with the provisions of a duly enacted financial recovery plan.
The Association contends that section 252 imposes limitations on labor awards and collective bargaining agreements entered into by a financially distressed municipality without placing similar restrictions on other contracts made by the same municipality. In order to support such a contention, the Association argues that the General Assembly has selectively regulated collective bargaining agreements to the exclusion of other contractual endeavors, which renders section 252 an unconstitutional special law. This argument is simply without merit.
First, the Act does not establish the narrow classification between labor and non-labor contracts alleged by the Association. Any plan designed to alleviate the financial distress of a municipality may also potentially impact upon prospective non-labor contracts. Under section 241 of Act 47, a fiscal recovery plan must include, if relevant, provisions for: balancing a municipality's budget; eliminating existing deficits and deficit funds; avoiding future deficits; satisfying past due accounts *437 payable; and avoiding future fiscal emergencies. 53 P.S. § 11701.241(2)(i), (ii), (iv), and (v). Any of these factors may potentially affect a financially distressed municipality's non-labor contracts throughout the effective period of the recovery plan. Moreover, Act 47 subjects all liabilities of the distressed municipality to re-negotiation. See 53 P.S. §§ 11701.243 and 11701.261. Collective bargaining agreements have not, therefore, been singled out for special regulation.
Second, assuming arguendo that the General Assembly did create a separate legislative classification between labor and non-labor contracts, Act 47 still withstands constitutional scrutiny because a rational basis exists for the classification. In order to place potential limits on labor contracting in Act 47, the General Assembly had to specifically address collective bargaining agreements and arbitration settlements because of the pre-existing statutory scheme in the area of labor law. Included in this arrangement are the processes established in Act 111, the Policemen and Firemen Collective Bargaining Act, 43 P.S. § 217.1 et seq., and Act 195, the Public Employe Relations Act, 43 P.S. § 1101.101 et seq., that regulate the labor contracts into which a public employer may enter. These labor contracts are regulated to the exclusion of non-labor contracts. Similar legislation does not exist involving the non-labor contracts that a distressed municipality may enter into. Therefore, it is apparent that a classification between labor and non-labor contracts is based upon rational distinctions existing in the law.
Because the statutory classification created by section 252 of Act 47 is rationally related to a proper state purpose, that provision does not violate Article III, Section 32(7) of the Pennsylvania Constitution. Therefore, the Association is not entitled to the declaratory relief it seeks under any theory of law, and the Commonwealth Court properly sustained the demurrer to Count V.
Having stricken all counts except the contractual claim against the Borough, the Commonwealth Court concluded that it lacked subject matter jurisdiction over the dispute. This *438 was correct, and the court properly transferred this case to the Court of Common Pleas.
Accordingly, we affirm the Order of the Commonwealth Court.
ZAPPALA, J., did not participate in the consideration or decision of this case.
LARSEN and McDERMOTT, JJ., did not participate in the decision of this case.
PAPADAKOS, J., files a dissenting opinion.
PAPADAKOS, Justice, dissenting.
I dissent. As stated in the Majority Opinion, Section 252 of Act 47 provides that "[a] collective bargaining agreement or arbitration settlement executed after the adoption of a plan shall not in any manner violate, expand or diminish its provisions." 53 P.S. § 11701.252. Thus, Section 252 of Act 47 effectively permits municipalities to adopt recovery plans which unilaterally determine the limits of future collective bargaining agreements and awards (including the reduction in salaries or benefits) without any meaningful input by the employee organization and with no guidelines or regulations other than the approval of the Coordinator/Secretary. In Count V of Appellants' Complaint, Appellants allege that Section 252 of Act 47 is a special law violating Article III, Section 32(7) of the Pennsylvania Constitution which states as follows:
The General Assembly shall pass no local or special law in any case which has been or can be provided for by general law and specifically the General Assembly shall not pass any local or special law.
. . . .
7. Regulating labor, trade, mining or manufacturing.
Pa. Const. art. III, § 32(7).
In determining whether an act is a "special law" violating the Pennsylvania Constitution, this Court has held that the *439 statutory classifications must have a rational relationship to a proper state purpose.[1] The Majority hold that Section 252 of Act 47 does not constitute a special law regulating labor because it is reasonable to forbid financially distressed municipalities from entering collective bargaining agreements that are inconsistent with the provisions of a duly enacted financial recovery plan.
The majority's analysis focuses on the wrong classification at issue. The legislative distinction between a municipality's contracts with its organized labor force and its other contractual commitments should be the focus. Under Act 47, collective bargaining agreements/awards have been specifically regulated to the exclusion of any other contractual endeavors. Section 252 has no specific counterpart addressing the distressed municipality's contractual relationships with any of its vendors, subcontractors, suppliers or even that segment of its labor force not collectively represented by organized labor. The Majority allude to a potential effect upon non-labor contracts. Aside from this narrow exception, the municipality is otherwise free to contract on any other subject notwithstanding the guidelines of the plan.
Thus, the Act effectively suspends collective bargaining and places all union employees in the category of non-union, at-will employees of the municipality. Those employees covered by collective bargaining agreements have a constitutionally protected expectation of continued employment under the terms *440 of the collective bargaining agreement. All other employees of the municipality have no such expectation except for the few who enjoy an individual contract of employment.
The Majority have offered no rationale or justification for the legislature's special restrictions of labor agreements, as opposed to contracts for any other purpose. The subject matter which the majority finds as being a viable class distinction (collective bargaining agreements or arbitration awards) does not withstand analysis or scrutiny as being a reasonable class distinction. Therefore, I would declare Section 252 of Act 47 an unconstitutional special law regulating labor in derogation of Article III, Section 32(7) of the Pennsylvania Constitution.
NOTES
[1] Act of July 10, 1987, P.L. 246, No. 47, §§ 101-501 (codified as amended at 53 P.S. §§ 11701.XXX-XXXXX.501).
[2] The only monies that it would continue to receive are those earmarked for capital projects under contract in progress, disaster relief funds and pension fund disbursements. 53 P.S. § 11701.251(b).
[3] 53 P.S. §§ 11701.248, 11701.251 and 11701.264.
[4] The corresponding statutory codifications of these three sections provide for the withholding of certain Commonwealth funds as follows:

53 P.S. § 11701.248. Failure to adopt or implement plan
If no plan is adopted or implemented pursuant to this chapter, then [53 P.S. §§ 11701.251 and 11701.264] shall apply.
53 P.S. § 11701.251. Commonwealth agency payments or assistance
(a) Withholding of certain Commonwealth funds.  Except as provided in [53 P.S. § 11701.302(b) (providing expedited loans and grants to municipalities before a final plan is adopted)], upon certification by the secretary that a financially distressed municipality has failed to adopt a plan or implement an adopted plan as proposed under this act or has adopted a plan which is inadequate to address the municipality's financial distress, the municipality shall not receive a grant, loan, entitlement or payment from the Commonwealth or any of its agencies. Moneys withheld shall be held in escrow by the Commonwealth until the secretary has rescinded the certification.
53 P.S. § 11701.264. Suspension of Commonwealth funding
(a) General rule.  A municipality which remains classified as financially distressed by the department and has failed to adopt or implement a plan within a period set by the Federal court, or has failed or refused to follow a recommendation by a coordinator, shall be notified in writing by the coordinator that he is requesting the secretary to issue a suspension of Commonwealth funding to the municipality for its failure to take the steps enumerated in the notice.
(b) Municipality's response.  The municipality shall have ten days from the date of the coordinator's notice in which to show cause to the secretary and the coordinator why Commonwealth funding to the municipality should not be suspended.
(c) Certification.  If the municipality has not adequately shown cause to the secretary and coordinator why such action should not be taken, the secretary, within 20 days of the coordinator's request, shall certify to the municipality in writing that each grant, loan, entitlement or payment by the Commonwealth or any of its agencies shall be suspended pending adoption of a plan calculated to fully resolve the municipality's financial distress. Suspended funds shall be held in escrow by the Commonwealth until the secretary has rescinded the certification.
[5] Any financially distressed municipality which adopts a recovery plan that is approved by the Secretary is eligible for low interest loans and grants. See 53 P.S. §§ 11701.XXX-XXXXX.303.
[6] A municipality by act of its governing body may, or upon being required by initiative and referendum in the area affected shall, cooperate or agree in the exercise of any function, power or responsibility with, or delegate or transfer any function, power or responsibility to, one or more other governmental units including other municipalities or districts, the Federal government, any other state or its governmental units, or any newly created governmental unit.

Pa. Const. art. IX, § 5.
[1] In Freezer Storage, Inc. v. Armstrong Court Company, this Court held:

Legislation for a class distinguished from a general subject is not special but general; and classification is a legislative question, subject to judicial revision only so far as to see that it is founded on real distinctions in the subjects classified, and not on artificial or irrelevant ones, used for the purposes of evading the constitution prohibition. If the distinctions are genuine, the courts cannot declare the classification void, though they may not consider it to be on a sound basis. The test is not wisdom, but good faith in the classification.
476 Pa. 270, 275, 382 A.2d 715, 718 (1978) (quoting DuFour v. Maize, 358 Pa. 309, 313, 56 A.2d 675, 677 (1948). See also, Leventhal v. City of Philadelphia, 518 Pa. 233, 542 A.2d 1328 (1988), and Tosto v. Pennsylvania Nursing Home Loan, 460 Pa. 1, 14, 331 A.2d 198, 204 (1975) (special laws provision "requires only that a classification must have some rational relationship to a proper state purpose").