FRATERNAL ORDER OF POLICE, FORT PITT LODGE NO. 1, by and through its Trustee Ad Litem, FOP President Michael Havens; and Michael Havens, in his capacity as a resident and taxpayer of the City of Pittsburgh, County of Allegheny, Commonwealth of Pennsylvania, Petitioners,

v.

Dennis YABLONSKY, in his Capacity as Secretary, Commonwealth of Pennsylvania, Department of Community and Economic Development; Commonwealth of Pennsylvania, Department of Community and Economic Development; Public Financial Management; Eckert Seamans Cherin & Mellott LLC; City of Pittsburgh; The Honorable Tom Murphy, in his capacity as Mayor of the City of Pittsburgh, Respondents.

Commonwealth Court of Pennsylvania.

Argued Dec. 8, 2004.

Decided Jan. 25, 2005.

Eric C. Stoltenberg, A. Bryan Campbell, and Joshua M. Bloom, Pittsburgh, for petitioners.

Clifford B. Levine and Susan E. Malie, Pittsburgh, for respondents.

BEFORE: COLINS, President Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, LEADBETTER, Judge, COHN JUBELIRER, Judge, SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY President Judge COLINS.

The defendants in this action have filed preliminary objections to the second amended complaint filed by the Fraternal Order of Police, Fort Pitt Lodge, No.1 (FOP). The complaint seeks a declaratory judgment that the Pittsburgh Recovery Plan (Plan), developed pursuant to the Municipalities Financial Recovery Act (Act 47), Act of July 10, 1987, P.L. 246, *as amended,* 53 P.S. §§ 11701.101—11701.501, is invalid under the State Adverse Interest Act (SAIA), Act of July 19, 1957, P.L. 1017, *as amended,* 71 P.S. § 776.1—776.8, and alternatively seeks judgment that those parts of the Plan that pertain to the police bargaining unit be stricken as (1) beyond the scope of Act 47, (2) beyond the authority of the Plan Coordinator, and (3) otherwise containing unlawful mandates. Because we conclude that the FOP's complaint presents no justiciable controversy and fails to state a claim under the SAIA, we sustain the respondents' preliminary objections.

By way of background, we note the following. Act 47 provides a procedure by which municipalities can petition the Commonwealth's Department of Community and Economic Development (DCED) for a determination of financially distressed status. Sections 202 and 203 of Act 47, 53 P.S. § 11701.202, § 11701.203. If the DCED determines that a municipality is financially distressed, the Secretary of the DCED must appoint a coordinator to prepare a plan to address the financial problems of the municipality. Section 221 of Act 47, 53 P.S. § 11701.221. Under Act 47 the plan must be consistent with applicable law and can include certain factors relevant to alleviating the financial distress of the municipality. Section 241 of Act 47, 53 P.S. § 11701.241. Among the factors that a plan may include is "[p]ossible changes in collective bargaining agreements and permanent and temporary staffing level changes or changes in organization." Section 241(3), 53 P.S. § 11701.241(3). Act 47 requires the plan to progress through a public response and revision period, following which the municipality may approve the plan or propose an alternative plan. Section 242(c)-(e) of Act 47, 53 P.S. § 11701.242(c)-(e). If the municipality approves the plan, Act 47 requires the coordinator to oversee the implementation of the plan. Section 247 of Act 47, 53 P.S. § 11701.247. Act 47 provides the coordinator with the power to initiate plan amendments after the municipality adopts the plan. Section 249 of Act 47, 53 P.S. § 11701.249. Pertinent to our discussion, Act 47 does not allow for a plan to supersede an existing labor agreement, but once a contract has expired, Act 47 prohibits any new contract from impairing the implementation of the plan. Section 252, 53 P.S. § 11701.252.

In this case, DCED retained Public Financial Management (PFM) to evaluate the City's financial condition. Based in part upon PFM's evaluation,[1] the Secretary issued an order concluding that the City of Pittsburgh is distressed. The DCED then engaged in a contract with PFM and the law firm of Eckert Seamans Cherin & Mellott L.L.C. (Eckert Seamans) to act as joint coordinator (coordinator) to prepare an Act 47 plan for the City. The coordinator prepared a recovery plan (Plan) that the City approved on June 30, 2004. At the time of the approval, the FOP and the City were parties to a collective bargaining agreement that was effective until December 31, 2004.

The FOP and the City began negotiations for a new agreement in June 2004, but the parties failed to reach an agreement during the bargaining process. Although that impasse enabled either party to request interest arbitration under Section 217.4 of the Act of June 24, 1968, P.L. 237 (Act 111), *as amended*, 43 P.S. § 217.4, according to the respondents' brief, the parties continue to engage in negotiations. The City's position throughout the negotiations has been that any agreement must include the provisions contained in the Plan.

1. Under Section 203 of Act 47, 53 P.S. § 11701.203, the Secretary, upon receiving a municipality's request for a determination of financially distressed status, must set a place and time for a hearing on the questions. Section 203(b), 53 P.S. § 11701.203(b). However, before the date of the hearing, the Secretary "may make an investigation into the financial affairs of the municipality." Section 203(c), 53 P.S. § 11701.203(c). The same subsection directs that the results of such investigations or any study shall be placed in the record of the public hearing. After the Secretary reaches a decision, Section 203(g), 53 P.S. § 11701.203(g), provides for the right of appeal under Title 2 of the Pennsylvania Consolidated Statutes.

### 1. The Complaint

In Count I of the complaint, the FOP contends that the Plan is invalid under the SAIA because the Plan is the result of an allegedly unlawful contractual relationship between certain respondents. Count II contends that certain recommendations in the plan violate Section 241 of Act 47 because that section provides that the coordinator may only make recommendations of possible changes to the collective bargaining agreement, and only if those changes are relevant to relieving the City of its distressed status. Thus, the FOP argues that, although a new collective bargaining agreement may not alter the terms of the Plan, the terms of the Plan cannot exceed the language of Section 241. That language, the FOP contends, limits the authority of the coordinator to include terms that set financial "parameters." In other words, the FOP argues that Section 241 allows the coordinator to set an ultimate budgetary goal for the bargaining parties to meet, but the precise means by which those parties may accomplish the goal should be left to them to work out in the bargaining process. The FOP contends that the Plan improperly eliminates any opportunity to engage in meaningful bargaining that would otherwise be available under Act 111. This Count asserts that, because Section 241 of Act 47 limits a coordinator's authority to making recommendations regarding changes in the collective bargaining agreement as a means to meet the financial goals of a plan, the essential elimination of the right to negotiate over traditional rights and terms subject to Act 111 arbitration, constitutes an improper excess of the authority granted to coordinator.

The FOP asserts in Count III that certain recommendations in the Plan are invalid because they are contrary to law or beyond the coordinator's authority; the FOP contends that the plan's inclusion of limitations on negotiation of terms that do not appear directly to relate to the City's financial condition, such as working conditions, exceeds the coordinator's authority. This Count includes numerous examples of terms that allegedly alter rights addressed by other legislation, including the federal Fair Labor Standards Act,[2] the Pennsylvania Workers' Compensation Act,[3] the Heart and Lung Act,[4] and Act 111 provisions relating to time limitations on the bargaining for and arbitration of labor agreements. Finally, Count IV challenges that certain recommendations in the Plan are invalid because they impair preexisting contractual rights concerning retirement compensation and pay-offs for unused accumulated leave (which the FOP characterizes as deferred compensation) in violation of the City's Home Rule Charter and Optional Plans Law, Article I, Section 10 of the United States Constitution, and Article I, Section 17 of the Pennsylvania Constitution.

### 2. The Preliminary Objections

The respondents raise a number of preliminary objections to the Complaint. First, the respondents contend that the Complaint fails to state a claim against the Secretary, DCED, PFM, and Eckert Seamans, because the City, rather than those parties, enacted the Plan and retains decision-making authority over the implementation of the Plan. Second, the respondents argue that, because this dispute pertains to the ongoing collective bargaining process, the matter is not ripe, as any disputes arising from those negoti-

---

**2.** 29 U.S.C. §§ 201 et seq.

**3.** Act of June 2, 1915, P.L. 736, *as amended.*

**4.** Act of June 28, 1935, P.L. 477, *as amended.*

ations can and should be resolved in Act 111 arbitration proceedings. Third, the respondents assert that the FOP's claim for relief under the SAIA fails to state a claim, because the FOP is not an aggrieved party under the coordinator contract and therefore lacks standing.[5] Finally, the respondents contend that the court lacks jurisdiction over the claims because the underlying dispute regarding the interplay between Act 111 and the Plan can and should be resolved by the Court of Common Pleas.

### a. Claims against the Secretary, DCED, PFM and Eckert Seamans

■ We sustain the respondents' preliminary objection asserting the failure of the complaint to state a claim against the Secretary, DCED, PFM, and Eckert Seamans. Initially, we note that the Secretary, DCED, and PFM were involved only in the process that led to the determination that the City is financially distressed. PFM and Eckert Seamans were involved in the development of the Plan, and the implementation of the Plan as coordinator. However, Act 47 vested in the City the power to decide whether to adopt the proposed Plan or to develop its own plan. Because the City elected to adopt the proposed Plan it is now bound by the terms of the Plan. The coordinator continues to have involvement by virtue of its duty to oversee the implementation of the Plan, including the collective bargaining process. However, Act 47 does not permit the coordinator to alter the recommendations of the Plan except through properly adopted Plan amendments, which process requires additional approval by the City. Although the Supreme Court's decision in *Wilkinsburg Police Officers Association v. Com-*

*monwealth,* 535 Pa. 425, 636 A.2d 134 (1993), addresses a distinct legal challenge from the one the FOP raises here, the Court's holding that the plaintiff union could not maintain an action against the Commonwealth based upon the claim that the defendants had forced the municipality of Wilkinsburg to adopt its recovery plan applies with equal force here.

■ The FOP also contends that these defendants are proper parties under the Declaratory Judgment Act, 42 Pa.C.S. §§ 7501—7541, because, if the Court were to declare the Plan invalid, these parties would have to redraft the Plan. However, we cannot conclude that any of these defendants have an interest in the outcome. Although the coordinator is charged with the responsibility of implementing the Plan it submitted to the City, if the Court were to declare the Plan invalid, the DCED could engage in a contract with another provider. While the coordinator has a duty to implement the Plan, it has no discrete interest or duty to defend the Plan. Hence, we sustain the respondents' preliminary objection for failure to state a cause of action against these respondents in Counts II, III, and IV.

### b. Lack of Actual Controversy

■ The respondents' objections to Counts II, III, and IV, are based on the contention that the FOP's claims present no actual controversy. All of these Counts assert that the coordinator exercised powers beyond those that Act 47 bestows, or as contrary to applicable law. The Declaratory Judgment Act provides in pertinent part that courts "may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if ren-

---

**5.** Respondents also rely on a laches argument, noting that the FOP failed to challenge the contract under the SAIA until after the contracting parties performed the work the contract required.

dered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding." 42 Pa.C.S. § 7537. Where no justiciable controversy exists, courts should not render or enter a declaratory judgment. *Cherry v. City of Philadelphia,* 547 Pa. 679, 692 A.2d 1082 (1997).

In *Wilkinsburg,* the Supreme Court noted that Article III, § 31 of the Pennsylvania Constitution empowers the General Assembly to enact laws "subjecting collective bargaining agreements with policemen and firemen to binding arbitration." 535 Pa. at 435, 636 A.2d at 139. Because the Constitution does not mandate the enactment of laws on the subject, the Court opined that "even if section 252 of Act 47 operates as a bar to prospective bargaining agreements or arbitration awards ... it would not violate Article III, Section 31...." *Id.* The Supreme Court therein recognized the notion that those rights that the General Assembly grants concerning collective bargaining and arbitration, the General Assembly may also limit or take away.

Here the FOP is primarily concerned with the effect of the coordinator's recommendations on the collective bargaining process and ultimately arbitration. The FOP contends in Counts II and III that, under Section 241, the coordinator can make only recommendations, that those recommendations cannot dictate the means by which the parties to a collective bargaining agreement or arbitration achieve the financial goals set forth for them in the Plan, and that the coordinator's inclusion in the Plan of recommendations that limit the subjects that the parties may address in the bargaining process is beyond a coordinator's power.

However, in this case, bargaining and arbitration remains an ongoing process. At this point we cannot predict what the outcome will be. Although in light of the fact that the Plan's recommendations are considered mandatory, *see Farrell v. Fraternal Order of Police Lodge 34,* 538 Pa. 75, 645 A.2d 1294 (1994), it seems realistic to assume that the FOP will not have the ability to negotiate in the manner it would otherwise have if the City had not adopted the plan, the Supreme Court's decision in *Farrell* stands for the proposition that any controversy arising from the impact of the Act 47 plan on the negotiations or arbitration between the City and the FOP will not be ripe until after the bargaining and arbitration process is completed. As indicated by that opinion, an arbitration panel's conclusion that a term in a plan relating to salary increases was an assumption, rather than a recommendation, was subject to review by the common pleas court.

Although the trial court's power to review an award is limited by the narrow certiorari standard, that review includes, as noted by the Court in *Farrell,* questions relating to excesses in the exercise of powers and constitutional issues. That degree of review is ample enough to address the FOP's challenges to the inclusion of terms and limitation of negotiable terms, especially in light of the express limitation created by Act 47 on the collective bargaining process.

The pivotal language of Section 252 of Act 47 makes clear the legislative intent to empower municipalities to address financial distress by limiting the powers of unions in the bargaining of new contracts. By adopting this section the legislature gave bargaining units the power to continue to be protected by the provisions of Act 111, but only to the extent that the bargaining does not interfere with the terms of the adopted plan for financial recovery.

Nonetheless, the FOP contends that declaratory judgment is appropriate because, if an arbitrator fails to include plan recommendations in an award, the DCED could cut Act 47 funding under Section 251(a) of

Act 47, which provides for the withholding of certain Commonwealth funds. Such an outcome is purely speculative at this time. There is no way to know now that an arbitrator's award will exclude necessary recommendations. Thus, this argument fails, because the matter is not ripe, and no controversy is present that could permit us to enter a declaratory judgment.

The FOP contends that awaiting arbitration, rather than addressing plan implementation in this action fails to recognize that the FOP's members have already been affected by the very adoption of the Plan, because the recommendations are mandatory and arbitration panels may not vary their award's provisions from the recommendations, thus effectively eliminating bargaining. Although we recognize that the Plan recommendations will likely have an impact on the terms over which the parties can bargain, the arbitration process, as discussed above, provides an adequate remedy for the FOP's concerns, based upon the legislative intent encompassed in Act 47 to limit the effect of bargaining on plan recommendations. As stated before, what rights the legislature bestows it may also limit or revoke.

The FOP argues it would have no opportunity to return to the bargaining table if it is successful in challenging an award provision in the courts. Again, however, the Declaratory Judgment Act does not provide for declaration of rights where the alleged wrong may never occur.

The FOP also contends that this action, as compared to the arbitration process, provides an opportunity to challenge the recommendations that do not appear to be designed to alleviate the financial distress of the municipality, as required under Section 241 of Act 47. However, again, this result is speculative, and an arbitration award that included provisions that were not relevant to relieving the City's finan-cial distress would constitute an excess in the arbitrator's award, subject to review by the common pleas court.

In Count IV, the FOP challenges some of the Plan provisions as taking away current benefits, such as pay for unused leave time. The FOP characterizes this type of benefit as a current benefit to which its members have a continuing right under the former contract provisions, whereas the respondents describe these benefits as a limitation on payment. The FOP also challenges alleged modifications of the present pension plan included in the recovery Plan. However, the FOP has not pleaded any facts supporting the assertion that any member is currently suffering any harm from the terms of the Plan with regard to pension or leave accrual rights.

Because there is no actual present controversy, and because the common pleas court reviewing an appeal of an arbitration award may address any infirmities claimed as a result of the inclusion or exclusion of plan recommendations by an arbitration panel, we conclude that the claims in Counts II, III, and IV are not justiciable. Accordingly, because the claims do not present an actual controversy, and because the administrative remedy of Act 111 arbitration affords all necessary relief, we will sustain the preliminary objections to Counts II, III, and IV.

### c. Claims Under the SAIA

∎ The respondents have also challenged the FOP's claims arising under the State Adverse Interest Act (SAIA). Section 3 of the SAIA provides:

No State advisor or State consultant having recommended to the State agency which he serves, either the making of a contract or a course of action of which the making of a contract is an express or implied part, shall at any time thereaf-

ter, have an adverse interest in such contract.

71 P.S. § 776.3.

The FOP's claims under the SAIA include at paragraphs 23 and 28 of the Complaint the charge that the Secretary and the DCED violated the SAIA by "contracting to PFM to serve as the consultant to make the determination of distressed status and then to serve as the Coordinator to develop the Act 47 Recovery Plan," and at paragraph 24 the charge that PFM violated the SAIA by "serving as consultant to Defendant DCED on the decision to declare Pittsburgh distressed and then accepting appointment as Act 47 Coordinator."

A proponent asserting a claim under the SAIA must plead facts showing the alleged violator made a recommendation as a state advisor or consultant that expressly or impliedly included a contract. SAIA, Section 3,71 P.S. § 776.3. The consultant must have an adverse interest in the subject contract by virtue of the recommendation. In this case, the FOP asserts that PFM made a recommendation to the DCED, and then ultimately gained by obtaining the contract to develop a plan for the City.

However, Act 47 requires the DCED and Secretary to do more than simply accept a recommendation from a party concerning the financial condition of a municipality. Section 203(c), 53 P.S. § 11701.203(c) provides for investigation into the issue of whether a municipality is financially distressed. Such investigation occurs after the DCED receives a request for determination but before the public hearing on the question. Neither this section nor any other section of Act 47 provides that the investigation or study conducted pursuant to the Secretary's request shall provide for or constitute a recommendation. The Secretary merely makes the information or study a part of the record of the hearing, and uses that information or study to aid in making a determination. Section 203(g) provides for appeals from the Secretary's determination. We agree with the defendants that the study PFM conducted did not make a recommendation **within the meaning of the SAIA.** We also agree that the pleaded facts do not support a contention that Eckert Seamans made a recommendation to the Secretary or DCED.

Further, the SAIA has no provision for the type of declaratory relief that the FOP seeks here. As the defendants point out, the City adopted the Plan as an ordinance, but the FOP has not alleged that the City violated the SAIA. Additionally, neither the Secretary nor the DCED is a state advisor or state consultant under the definitions in the SAIA.

In summary, because neither the PFM nor Eckert Seamans made a recommendation to the Secretary that expressly or impliedly included a contract, the SAIA is simply not applicable to the defendants named in Count I.

### d. Jurisdiction

■ The respondents also challenge this Court's jurisdiction over this matter. First, we note that, because we have concluded above that none of the state-related respondents are subject to the FOP's claims, this Court does not have jurisdiction. 42 Pa.C.S. § 761. Further, the common pleas courts have jurisdiction over appeals from Act 111 arbitration awards. For the reasons set forth above, we agree that this Court has no jurisdiction over these claims. We therefore sustain the respondents' preliminary objections to Counts II, III, and IV on jurisdictional grounds.

In summary, we sustain all of the respondents' preliminary objections, and dismiss the Complaint.

Judge McGINLEY did not participate in this decision.

## ORDER

AND NOW, this 25th day of January 2005, the preliminary objections filed by the respondents are sustained. The Complaint is dismissed.