IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of New Castle, :
               Appellant :
                :
        v. : No. 242 C.D. 2022
             : Argued: October 11, 2022
International Association of :
Firefighters, Local 160 :

BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE STACY WALLACE, Judge
              HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION
BY SENIOR JUDGE LEAVITT              FILED: November 22, 2022

The City of New Castle (City) has appealed an order of the Court of Common Pleas of Lawrence County (trial court) that denied the City's petition to vacate an arbitration award. The arbitration arose from a grievance filed by the International Association of Firefighters, Local 160 (Union) that the City had violated the parties' collective bargaining agreement (CBA). The arbitrator agreed, holding that the applicable CBA required the City to pay a survivor pension benefit equal to that paid to the retired firefighter prior to his death. The City contends that the trial court erred because the arbitration award ordered the City to do an illegal act. Discerning no merit to this contention, we affirm the trial court.

## Background

Dennis Stone began employment with the City as a full-time firefighter on April 1, 1967, and he retired on December 31, 2006, after 39 years of service. At the time of his death on June 26, 2020, Stone was receiving a retirement pension at the rate of 75% of his final average compensation in accordance with the CBA in effect at the time of his retirement. After Stone died, the City paid a survivor benefit

to his widow at the rate of 50% of Stone's final average compensation. The Union filed a grievance, asserting that under the CBA, Mrs. Stone was entitled to a survivor pension benefit equal to that paid to Stone during his lifetime.

Prior to 1998, firefighter pension benefits were governed by the Third Class City Code[1] and set at 50% of the firefighter's final average compensation. With regard to surviving spouses, Section 14321(d) of the Third Class City Code states, in pertinent part, as follows:

> (d) Payments to surviving spouse. -- Upon the death of a member who retires on pension or is killed in service on or after January 1, 1960, or who dies in the service on or after January 1, 1968, *payments* as provided under this subchapter *shall be made to the member's surviving spouse during the life of the spouse*.

11 Pa. C.S. §14321(d) (emphasis added). In short, Section 14321(d) entitles surviving spouses to a continued payment of the member's pension "during the life of the spouse." *Id*.

In 1997, relying on the authority provided under the Optional Third Class City Charter Law,[2] the City opted to negotiate with the Union on pension benefits rather than be bound by pension provisions of the Third Class City Code. On September 23, 1997, the City and the Union entered into a four-year agreement that, *inter alia*, increased the firefighter's pension benefit and became effective on January 1, 1998. The 1998 CBA states that "[t]he monthly amount of the normal retirement benefit for those who retire on or after January 1, 1998 shall be equal to *seventy-five percent* (*75%*) of the participant's average compensation." Article X(2) of the 1998 CBA; Reproduced Record at 216a (R.R. __) (emphasis added).

---

[1] 11 Pa. C.S. §§10101-14702.

[2] Act of July 15, 1957, P.L. 901, *as amended*, 53 P.S. §§41101-41625.

2

Although the 1998 CBA was silent on survivor benefits, it addressed "existing benefits" as follows:

> The purpose of this Agreement is to codify and incorporate all existing benefits, terms and conditions of employment into an all-inclusive Agreement. The Parties hereto agree that *all existing benefits, terms and conditions of employment* currently enjoyed by all members of the City of New Castle Fire Department, but *omitted from this Agreement are hereby retained as* if the same had been specifically set forth herein.

Article XVI of the 1998 CBA; R.R. 224a (emphasis added).[3] The 1998 CBA has been followed by successive agreements, but Article X and Article XVI (now Article XVIII), as quoted above, have remained the same in each agreement.

On December 11, 1997, prior to the effective date of the 1998 CBA, the City enacted Ordinance 7343. NEW CASTLE CITY ORDINANCE NO. 7343 (1997). It set the survivor benefit in the City's Firemen's Pension Plan for firefighters retiring after January 1, 1998, at 50% of the deceased firefighter's average compensation at the time of his or her retirement. *Id.* The Ordinance states, in relevant part, as follows:

> For any Firefighter retiring after January 1, 1998, the monthly amount of the Survivor Benefit shall be equal to fifty percent (50%) of the Participant's Average Compensation at the time of his/her retirement.

*Id.*

In 2007, the City was designated financially "distressed," by the Secretary of Community and Economic Development under the Municipalities Financial Recovery Act.[4] The City's coordinator developed a recovery plan to

---

[3] The same provision appears at Article XVIII in the current CBA. *See* R.R. 409a.

[4] Act of July 10, 1987, P.L. 246, No. 47, *as amended*, 53 P.S. §§11701.101-11701.712 (Act 47).

address its financial issues. Section 221 of Act 47, 53 P.S. §11701.221; *see also Wilkinsburg Police Officers Association v. Pennsylvania Department of Community Affairs and the Borough of Wilkinsburg*, 636 A.2d 134, 135 (Pa. 1993). Notably, "Act 47 does not allow for a plan to supersede an existing labor agreement, but once a contract has expired, Act 47 prohibits any new contract from impairing the implementation of the plan." *Fraternal Order of Police, Fort Pitt Lodge No. 1 v. Yablonsky*, 867 A.2d 658, 660 (Pa. Cmwlth. 2005); *see also* Section 252 of Act 47, 53 P.S. §11701.252.

On July 15, 2020, the Union filed a grievance, which stated as follows:

Recently, New Castle Firefighters Local 160 was made aware that the Survivor's Benefit for Dennis Stone's widow was reduced. According to SECTION 4322 of the Third Class City Code:[5]

**"Payments to surviving spouses of members <u>retired on pension</u> or killed in the service on or after January 1, 1960 or who die in the service on or after January 1, 1968 shall be the <u>amount payable to the member</u>, or which would have been payable had he retired at the time of his death."**

The Union contends this is a violation of Article III Section 3 of the Collective Bargaining Agreement, and therefore we are duly grieved.

---

[5] Former Act of June 23, 1931, P.L. 932, *as amended*, 53 P.S. §39322; Section 4322 was repealed by the Act of November 24, 2015, P.L. 242.

The language of *former* Section 4322 now appears at Section 14322(a)(3) of the Third Class City Code and states, in relevant part, as follows: "Payments to surviving spouses of members retired on pension or killed in service on or after January 1, 1960[,] or who die in service on or after January 1, 1968, shall be the amount payable to the member, or which would have been payable had the member been retired at the time of the member's death." 11 Pa. C.S. §14322(a)(3).

R.R. 416a (emphasis, including capitalization, in original). Thereafter, the grievance was submitted to Act 111[6] arbitration in accordance with Article XI of the CBA.[7] On May 5, 2021, the arbitrator held a hearing during which the parties presented testimonial and documentary evidence, including the testimony of individuals who participated in the negotiation of the 1998 CBA.

The arbitrator found that the parties did not agree to change the survivor benefit in the 1998 CBA from what it had been in 1997; the Union was not aware that Ordinance 7343 had been enacted in December of 1997; and the Union never agreed to reduce the survivor benefit to 50% as provided in Ordinance 7343. The arbitrator found that with the enactment of Ordinance 7343, the City unilaterally changed the survivor pension benefit from that bargained for in the 1998 CBA. Based on these findings, the arbitrator awarded Mrs. Stone a survivor benefit equal to the pension Stone had been receiving prior to his death, *i.e.*, 75% of Stone's final average compensation.

On September 9, 2021, the City filed a petition to vacate the arbitration award, asserting that the arbitrator exceeded his authority and that the award required the City to perform an illegal act or acts. Specifically, the award required the City to violate the Municipal Pension Plan Funding Standard and Recovery Act,[8] which requires an actuarial study be done before revising a municipal pension, and Act 47, which governs financially distressed cities, such as New Castle.

---

[6] The Policemen and Firemen Collective Bargaining Act, Act of June 24, 1968, P.L. 237, No. 111, *as amended*, 43 P.S. §§217.1-217.12, commonly referred to as Act 111. Act 111 specifically authorizes collective bargaining between police and firefighters and their public employers.

[7] Article XI of the CBA states, in pertinent part, "[i]f the grievance is not settled at the fourth step, the Union may within [21] days submit the matter to arbitration . . . ." R.R. 406a.

[8] Act of December 18, 1984, P.L. 1005, No. 205, *as amended*, 53 P.S. §§895.101-895.1131 (Act 205).

The trial court denied the petition to vacate. It found no merit in the City's contentions.

In so holding, the trial court relied upon the arbitrator's findings. The arbitrator found that approximately one year before the inception of the 1998 CBA, the City had undertaken an actuarial study of the impact of increasing survivor benefits, as required by Act 205.[9] Specifically, the arbitrator found, in pertinent part, as follows:

> In preparation for the 1997 labor negotiations for a successor Collective Bargaining Agreement to the 1995-1997 Collective Bargaining Agreement the City was concerned about the excessive cost . . . of providing Firefighters an unlimited right to accumulate and sell back sick days. With this concern in mind the City had its actuary study the effect of improving the monthly amount of the Normal Retirement Benefit for those Firefighters who retire on or after January 1, 1998[,] from 50% of the Participant's Average Compensation to 75%. The actuary looked at two (2) alternative proposals. *The first proposal involved changing the Survivor Benefit for any Firefighter* retiring after January 1, 1998[,] to a monthly amount *equal to 50%* of the Participant's Average Compensation at the time of retirement. *The second proposal maintained the Survivor Benefit at 100% of the amount payable to the retired Participant* at the time of retirement.

---

[9] Section 301(a) of Act 205 states:

> Notwithstanding any provision of law, municipal ordinance, municipal resolution, municipal charter, pension plan agreement or pension plan contract to the contrary, the applicable provisions of this chapter shall apply to any municipality which has established and maintains, directly or indirectly, a pension plan for the benefit of its employees, irrespective of the manner in which the pension plan is administered, and to the respective pension plan.

53 P.S. §895.301(a). Section 305 of Act 205, 53 P.S. §895.305, requires an actuarial cost estimate for any benefit plan modification.

6

Arbitration Award at 12; R.R. 663a (emphasis added). Given the actuarial study that preceded the increase in the firefighter pension, the trial court held that the arbitration award did not require the City to do an illegal act under Act 205. Because the arbitration award construed the 1998 CBA, which predated the City's Act 47 Recovery Plan by approximately 10 years, the arbitration award did not violate the City's recovery plan or Act 47.

On February 17, 2022, the trial court denied the City's petition to vacate, and the City appealed to this Court.

## Appeal

On appeal, the City raises two issues.[10] First, it contends that the arbitrator exceeded his powers because the award orders the City to perform an illegal act. The City will be required to pay a pension enhancement without a timely Act 205 study and in contravention of the City's Act 47 recovery plan. Second, it contends that the arbitrator exceeded his jurisdiction by usurping the role of the Pennsylvania Labor Relations Board (PLRB) in holding "that the City allegedly failed to bargain over the enactment of a pension ordinance in 1997." City Brief at 56.

In response, the Union argues that the trial court did not err because the arbitration award does not require the City to perform an illegal act under either Act 205 or Act 47. The arbitrator determined that the 1998 CBA left "existing benefits," including those paid to surviving spouses, unchanged from the prior CBA, which

---

[10] Our review in cases arising under Act 111 is *narrow certiorari*. We consider questions relative to four issues, *i.e.*, "(1) the jurisdiction of the arbitrator, (2) the regularity of the proceedings, (3) whether the arbitrator exceeded his powers, and (4) whether there has been deprivation of constitutional rights." *Town of McCandless v. McCandless Police Officers Association*, 901 A.2d 991, 995 (Pa. 2006).

had awarded a surviving spouse a continued payment of the firefighter's pension. Further, the award is based solely on the language of the CBA and not upon a failure to bargain.

## Analysis

An arbitration award is subject to a deferential standard of review. Nevertheless, an arbitrator may not order a public employer to do an illegal act. Rather, a public employer can be ordered to do only what the employer can do voluntarily. *Pennsylvania State Police v. Pennsylvania State Troopers' Association (Betancourt)*, 656 A.2d 83, 90 (Pa. 1995). An arbitration award must bear a rational relationship to the terms or conditions of employment, defined in Act 111 as "compensation, hours, working conditions, retirement, pensions and other benefits." Section 1 of Act 111, 43 P.S. §217.1.

Merely because a court differs in its interpretation of the collective bargaining agreement is "insufficient justification for vacating an award." *State System of Higher Education (Cheyney University) v. State College University Professional Association (PSEA-NEA)*, 743 A.2d 405, 411 (Pa. 1999) (*Cheyney University*). Under the so-called "essence test,"

> there is a strong presumption that the Legislature and the parties intended for an arbitrator to be the judge of disputes under a collective bargaining agreement. That being the case, courts must accord great deference to the award of the arbitrator chosen by the parties. A fortiori, in the vast majority of cases, the decision of the arbitrator shall be final and binding upon the parties. However, there exists an exception to this finality doctrine. The arbitrator's award must draw its essence from the collective bargaining agreement. Pursuant to the essence test . . . a reviewing court will conduct a two-prong analysis. First, the court shall determine if the issue as properly defined is within the terms of the collective bargaining agreement. Second, if the issue is embraced by the agreement, and thus, appropriately

8

before the arbitrator, the arbitrator's award will be upheld if the arbitrator's interpretation can rationally be derived from the collective bargaining agreement. That is to say, a court will only vacate an arbitrator's award where the award indisputably and genuinely is without foundation in, or fails to logically flow from, the collective bargaining agreement.[]

*Id*. at 413 (footnotes omitted). If the interpretation of the CBA can in any rational way be derived from the agreement, it must be respected. *Westmoreland Intermediate Unit #7 v. Westmoreland Intermediate Unit #7 Classroom Assistants Educational Support Personnel Association (PSEA/NEA)*, 939 A.2d 855, 862 (Pa. 2007).

The City argues that the arbitration award requires it to do what it cannot do voluntarily. City Brief at 21. Specifically, it argues that the survivor benefit ordered by the arbitrator is an enhancement that violates two statutes: Act 205 and Act 47.

Under Act 205, a municipality must undertake an actuarial study before making a benefit plan modification to ensure the pension is sound. *See, e.g.*, *City of Erie v. International Association of Firefighters Local 293*, 836 A.2d 1047, 1051 (Pa. Cmwlth. 2003). Section 305 of Act 205 states, in pertinent part, as follows:

> (a) Presentation of cost estimate.--Prior to the adoption of any benefit plan modification by the governing body of the municipality, the chief administrative officer of each pension plan shall provide to the governing body of the municipality a cost estimate of the effect of the proposed benefit plan modification.
>
> * * * *
>
> (e) Contents of cost estimate.--Any cost estimate of the effect of the proposed benefit plan modification shall be complete and accurate and shall be presented in a way reasonably calculated to disclose

9

to the average person comprising the membership of the governing body of the municipality, the impact of the proposed benefit plan, the modification on the future financial requirements of the pension plan and the future minimum obligation of the municipality with respect to the pension plan.

53 P.S. §895.305(a), (e). The City argues that without "an actuarial cost estimate conducted in accordance with Section 305 of Act 205," the City cannot lawfully provide a benefit enhancement to surviving spouses. City Brief at 14-15. Further, the arbitration award's benefit enhancement violates the City's Act 47 recovery plan, which "continues to prohibit increases to the pension or retiree medical benefits for current, future or retired employees." Actuarial Valuation Report for City of New Castle at 59; R.R. 371a. In support, the City cites Section 252 of Act 47, 53 P.S. §11701.252 (stating CBAs executed after the adoption of a plan cannot violate, expand or diminish the plan's provisions).

The City's argument is based on the premise that the award directed an "enhancement" to survivor benefits. The 1998 CBA increased the firefighter pension benefit from 50% to 75%, but it was silent on the level of the survivor benefit. The CBA stated that "existing benefits" that were "omitted from this Agreement are hereby retained[.]" Article XVI of the 1998 CBA; R.R. 224a. There are two ways to read this clause: it retained the survivor benefit at 50% of the firefighter's final average compensation while raising the firefighter's pension benefit to 75%, or it retained a survivor benefit equal to that of the retired firefighter.

The arbitrator read Article XVI to mean that the survivor was entitled to a continued payment of the firefighter's pension, resolving the ambiguity in favor of the Union. Our Supreme Court has directed that "[t]he arbitrator's award must be 'respected by the judiciary if the interpretation can *in any rational way* be derived

10

from the agreement.'" *Westmoreland Intermediate Unit #7*, 939 A.2d at 862 (quoting *Community College of Beaver County v. Community College of Beaver County, Society of Faculty (PSEA/NEA)*, 375 A.2d 1267, 1275 (Pa. 1977)) (emphasis added). That this Court may have construed the existing benefit clause differently is of no moment. So long as the award draws its essence from the language of the 1998 CBA, it must be affirmed. Here, the award draws its essence from Article XVI of the 1998 CBA.

In any case, the arbitration award does not compel the City to do illegal acts. With respect to Act 205, the study of November 18, 1996, considered the impact of an increase in retirement benefits for firefighters from 50% of average final compensation to 75%, as well as survivor benefits *at both the 50% and 75% rates*. *See* Trial Court Op., 2/17/2022, at 7; R.R. 132a. With respect to Act 47, the arbitrator explained that "[t]here was no mention of the [s]urvivor [b]enefit in the 1998-2002 [CBA]. Nor [has] there ever been any mention of the [s]urvivor [b]enefit in any of the [] subsequent agreements." Arbitration Award at 13; R.R. 664a. "Act 47 prohibits any new contract from impairing the implementation of the plan," but it does not permit a recovery plan "to supersede an existing labor agreement." *Yablonsky*, 867 A.2d at 660. Here, because the existing labor agreement has remained unchanged since 1998, it did not impair the City's Act 47 recovery plan. Simply, the award did not enhance the survivor benefit, and the trial court did not err in refusing the City's petition to vacate.

We next consider the City's argument that the arbitrator exceeded his jurisdiction by ruling that the City did not bargain over Ordinance 7343. The City contends that failing to bargain is not an issue that can be resolved through an interpretation of the CBA. In this regard, the City maintains that a failure to bargain

11

over Ordinance 7343 would constitute an unfair labor practice and, thus, falls within the exclusive jurisdiction of the PLRB. City Brief at 51. Our Supreme Court has explained that if a party seeks redress of an arguably unfair labor practice, "jurisdiction to determine whether an unfair labor practice has indeed occurred and, if so, to prevent a party from continuing the practice is in the PLRB, and nowhere else." *Hollinger v. Department of Public Welfare*, 365 A.2d 1245, 1249 (Pa. 1976).

Here, the arbitrator found "the City unilaterally changed the [s]urvivor [b]enefit in violation of the [CBA]" based on the issue put before him by the parties. Arbitration Award at 20; R.R. 671a. The arbitration award was not a ruling on Ordinance 7343 or a failure to negotiate. In considering the parties' competing interpretations of the 1998 CBA, the arbitrator considered whether Ordinance 7343 could be used to resolve the ambiguity in the CBA. The arbitrator concluded that the contract language, not Ordinance 7343, was dispositive. The arbitrator did not exceed his jurisdiction by holding Ordinance 7343 irrelevant to his construction of the 1998 CBA.

The arbitrator arrived at a reasoned interpretation of the 1998 CBA, concluding that the City violated the parties' agreement by paying Stone's surviving spouse a pension lower than what Stone had received in his lifetime. As our Supreme Court stated in *Cheyney University*:

> [A] reviewing court will conduct a two-prong analysis. First, the court shall determine if the issue as properly defined is within the terms of the collective bargaining agreement. Second, if the issue is embraced by the agreement, and thus, appropriately before the arbitrator, the arbitrator's award will be upheld if the arbitrator's interpretation can *rationally be derived* from the collective bargaining agreement.

12

*Cheyney University*, 743 A.2d at 413 (emphasis added). Firefighter pensions, and accompanying benefits, are plainly embraced within Sections X and XVI of the 1998 CBA. While several considerations factored into the arbitrator's interpretation of the CBA, the award was rationally derived from it.

### Conclusion

For the foregoing reasons, we affirm the order of the trial court, which affirmed the award of the arbitrator.

_____
MARY HANNAH LEAVITT, President Judge Emerita

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of New Castle,             :
           Appellant    :
                       :
          v.            :     No. 242 C.D. 2022
                       :
International Association of   :
Firefighters, Local 160      :

# **O R D E R**

AND NOW, this 22nd day of November, 2022, the February 17, 2022, order of the Court of Common Pleas of Lawrence County, in the above-captioned matter, is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge Emerita